**Record No. 14-1841**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

ZOROASTRIAN CENTER AND
DARB-E-MEHR OF METROPOLITAN
WASHINGTON, D.C.,

*Plaintiff - Appellant*

v.

RUSTAM GUIV FOUNDATION OF
NEW YORK, et al.,

*Defendants - Appellees*

ONAPPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA – ALEXANDRIA DIVISION

**BRIEF OF APPELLANT**

| | | |
|---|---|---|
| Robert L. Vaughn, Jr. | Massie P. Cooper | Billy B. Ruhling, II |
| O'Connor & Vaughn LLC | Troutman Sanders LLP | Troutman Sanders LLP |
| 11490 Commerce Park Dr. | 1001 Haxall Point | Suite 500 |
| Suite 510 | P.O. Box 1122 | 1850 Towers Crescent Pl. |
| Reston, Virginia 20191 | Richmond, VA 23218 | Tysons, Corner, VA 22182 |
| T 703-689-2100 | T 804-697-1392 | T 804-734-4334 |

*Counsel for Appellant*              *Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1841__    Caption: __ZCDMW v. RGF, et. Rustam Guiv Foundation, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C. ("ZCDMW")__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                  ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: ___August 21, 2014___

Counsel for: ZCDMW

## CERTIFICATE OF SERVICE
***************************

I certify that on ___August 21, 2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

(signature)

___August 21, 2014___
(date)

- 2 -

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION ......................................................... 1

STATEMENT OF ISSUES PRESENTED.................................................. 1

STATEMENT OF THE CASE.................................................................... 2

SUMMARY OF THE ARGUMENT ....................................................... 19

ARGUMENT .............................................................................................. 32

1.    The District Court's finding that removal of this matter from the Circuit
Court of Fairfax County was proper was in error as RGF failed to carry its
burden of establishing diversity, and because, in fact, there was not complete
diversity; the determination of the citizenship of a trust is a matter of first
impression in this Circuit ................................................................................. 25

2.    The District Court's granting of summary judgment when material
issues of fact were in dispute, inclusive of the credibility of witnesses,
was in error.......................................................................................................... 40

3.    The District Court's finding that ZCDMW breached the subject
Lease, as Amended, by failing to timely construct the Darb-E-Mehr on
the leased property was in error.   The parties entered into a
Memorandum of Understanding ("MOU") that superseded the Amendment,
which MOU was binding and enforceable.   At a minimum, it created an
issue of fact which could only be determined at trial................................. 44

4.    Even if the Lease Amendment remained in effect, which ZCDMW
disputes, RGF either is estopped or is deemed to have waived any
requirements related to the commencement and/or completion
dates of construction by its own actions in directing ZCDMW
to cease and desist its construction activities during the time frame

i

it is undisputed the Lease was in full force and effect.................................47

5.  The District Court's finding that ZCDMW had failed to complete
construction of a Darb-e-Mehr was in error.   ZCDMW did, in fact,
construct a Darb-E-Mehr on the property.................................................50

6.  The District Court's award of attorney's fees to RGF on issues and
matters on which it did not prevail was in error.........................................51

CONCLUSION ....................................................................................... 54

REQUEST FOR ORAL ARGUMENT ................................................................ 55

CERTIFICATE OF COMPLIANCE.................................................................... 55

CERTIFICATE OF SERVICE ............................................................................ 56

# TABLE OF AUTHORITIES

## CASES

Page

*Allen v. Chapman,*
    242 Va. 94, 406 S.E.2d 186 (1991) .................................................................27

*Barnhill v. Veneman,*
    524 F.3d 458 (4th Cir. 2008)……………………………………………....49

*Darring v. Kincheloe,*
    783 F.2d 874 (9th Cir.1986) ..........................................................................48

*Barbour v. International Union,*
    640 F.3d 599,,190 L.R.R.M. (BNA) 2093 (4th Cir., 2011) ...........................25

*Barnette v. Brook Road, Inc.,*
    429 F. Supp. 2d 741(E.D. Va. 2006)………………………………………52

*C & K Petrol. Prods., Inc. v. Equibank,*
    839 F.2d 188 (3d Cir. 1988)……………………………………………….49

*Chawla v. BurgerBusters, Inc.,*
    255 Va. 616, 499 S.E.2d 829 (1998)………………………………………51

*County of Fairfax v. First Virginia Bank,*
    19 Cir. L123017, 31 Va. Cir. 124 (1993) ......................................................28

*De Sole v. United States,*
    947 F.2d 1169 (4th Cir. 1991)……………………………………………...52

*Dixon v. Coburg Dairy, Inc.,*
    369 F.3d 811 (4th Cir.2004) ..........................................................................26

*Emerald Investors Trust v. Gaunt Parsippany Partners,*
    492 F.3d 192 (3d Cir. 2007) ...............................................................16, 27, 36

*Freeman v. Dal-Tile Corp.,*
    750 F. 3d 413 (4th Cir.
    2014)……………………………………………………………..40, 44, 47, 50

*Hartley v. CSX Transport, Inc.*,
    187 F.3d 422 (4th Cir.1999) ..............................................................................26

*Healy v. Ratta*,
    292 U.S. 263, 54 S. Ct. 700, 78  L. Ed. 1248 (1934) .....................................26

*Hoffman v. Daimler Trucks N. Am., LLC,*
    940 F.Supp.2d 347 (W.D. Va., 2013)……………………………………………..45

*Johnson v. Advance America*,
    549 F.3d 932 (4th Cir. 2008) ......................................................................26, 48

*Kokkonen v. Guardian Life Ins. Co. of America*,
    511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) .................................26

*Logan v. General Fireproofing Company,*
    521 F.2d 881(4th Cir. 1971)………..…………………………..…41, 44, 47

*Maryland Stadium Authority v. Ellerbe Becket, Inc.*,
    407 F.3d 255 (4th Cir.2005) ...............................................................................26

*Payne ex rel. Estate of Calzada v. Brake*,
    439 F.3d 198 (4th Cir.2006) ...............................................................................25

*Poulos v. GeoMet Operating Co.*,
    2013 W. 2456044 (W.D. Va. June 6, 2013) ......................................................27

*Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*,
    407 F3d 631, 635 (4th Cir. 2005)……………..………………………….40, 41

*Roanoke Cement Co., L.L.C. v. Falk Corp.,*
    413 F.3d 431 (4th Cir. 2005)…………………………………………….......51

*Shamrock Oil & Gas Corp. v. Sheets*,
    313 U.S. 100, 61 S. Ct. 868, 85 L. Ed. 1214 (1941) ...........................26, 33, 40

*Traylor v. Holloway*,
142 S.E. 2d 521
    (1965)………………………………………………………………………44, 47

## STATUTES AND OTHER AUTHORITIES

28 U.S.C. §1291 ......................................................................................................... 1

28 U.S.C. § 1332 ....................................................................................................... 16

Kan. Stat. § 8-240(b)(4) ........................................................................................... 36

Rhode Island Code § 31-10-1 .................................................................................. 36

Restatement (Second) of Contracts § 90……………………………………….............49

## APPELLANT'S BRIEF

COMES NOW the Appellant, Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C. ("ZCDMW") and submits the following Brief in support of its appeal in this matter.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This appeal emanates from the Memorandum Opinion and Order entered by the U.S. District Court for the Eastern District, Alexandria Division, on May 12, 2014, which Order granted, in part, summary judgment on behalf of the Rustam Guiv Foundation ("RGF"), and denied summary judgment to ZCDMW. The Order left open the issue of attorney's fees and costs. After further briefing of that issue, and ZCDMW's Motion to Reconsider, the District Court decided both motions on the papers, entering a final Order on July 22, 2014, denying ZCDMW's Motion to Reconsider and granting, in part, RGF's Motion for Attorney's Fees and Costs, awarding it $99,717.85 of the $200,000 plus in fees and costs RGF sought.

On August 19, 2014, ZCDMW timely filed its Notice of Appeal to this Court pursuant to 28 U.S.C. §1291.

## STATEMENT OF ISSUES PRESENTED

I.    The District Court's finding that removal of this matter from the Circuit Court of Fairfax County was proper was in error as RGF failed to carry its burden of establishing diversity, and because there was not, in fact, complete diversity; the determination of the citizenship of a trust is a matter of first impression in this Circuit.

II. The District Court's granting of summary judgment when material issues of fact were in dispute, inclusive of the credibility of witnesses, was in error.

III. The District Court's finding that ZCDMW breached the subject Lease, as Amended, by failing to timely construct the Darb-E-Mehr on the leased property was in error. The parties entered into a Memorandum of Understanding ("MOU") that superseded the Amendment, which MOU was binding and enforceable. At a minimum, it created an issue of fact which could only be determined at trial

IV. Even if the Lease Amendment remained in effect, which ZCDMW disputes, RGF either is estopped or is deemed to have waived any requirements related to the commencement and/or completion dates of construction by its own actions in directing ZCDMW to cease and desist its construction activities during the time frame it is undisputed the Lease was in full force and effect.

V. The District Court's finding that ZCDMW had failed to complete construction of a Darb-e-Mehr was in error. ZCDMW did, in fact, construct a Darb-E-Mehr on the property.

VI. The District Court's award of attorney's fees to RGF on issues and matters on which it did not prevail was in error.

## STATEMENT OF THE CASE

ZCDMW is a religious, charitable, and educational organization dedicated to building a Zoroastrian Darb-e Mehr, or place of worship, in the Washington D.C. metropolitan area. Zoroastrianism is an ancient religion of Persia founded by the prophet and reformer Zoroaster in the 6th Century, with the concepts of one God, judgment, heaven and hell.

RGF is a trust created by Rustam Guiv. During the course of the litigation, RGF submitted what it contended to be the operative Trust Agreement dated February 4, 1980, as amended on or about December 4, 2003 ("Trust Agreement").

(App. 145-162)   As of the date of the amendment, the Trust Agreement identified the Trustees as Jamshid Guiv, Rostam Sarfeh, Shari Merabi, B. Kaviani, Farokh Patel and Morvarid Guiv.

The purpose of the RGF Trust was to "devote and apply the property …(vested in the Trustees) and the income to be derived therefrom exclusively for religious purposes by grants to qualified groups or organization [sic] engaged in the practice and advancement of the Zoroastrian Religion."   Trust Agreement ¶ 2.   In accordance with paragraph 3 of the Trust Agreement, the property of the Trust consisted of such "corporations shares, bonds, securities, property and assets, set forth in the schedule hereto attached, marked Exhibit "A"…."   At no time did RGF produce Exhibit A identifying the assets of the Trust.

Per paragraph 5 of the Trust Agreement, the Trustees act based upon a vote of a majority of their members; all actions of the Trustees are required to be taken "either by resolution at a meeting or by written record without a meeting."   It is mandated that the Trustees appoint a secretary "who shall cause a record to be kept of all actions of the Trustees."   Paragraph 7 goes on to provide that the Trustees serve until their death, removal, resignation or incapacity; successor Trustees are elected by majority vote of the remaining Trustees.   At all times pertinent to the matters at issue, Dr. Daryoush Jahanian held himself out as the individual who maintained the books and records of RGF.   (App. 598:15-19)   Dr. Jahanian

˘3˘

identified Dr. Khosro Mehrfar as the secretary of RGF.   (App. 578:18-22)

One of the assets of RGF is a parcel of real estate containing 6.8 acres located in Fairfax County, located at 2347 Hunter Mill Road, Vienna, Virginia 22181 (the "Vienna Property").   RGF, through its Trustees, acquired title by Deed dated June 5, 1991.   (App. 34-35)   The aforesaid Deed identifies the Trustees of RGF as Daryoush Jahanian, Rostam Sarfeh, and Rostam Ghaibi.   Only Rostam Sarfeh is identified as a Trustee in both the Trust Agreement and the Deed.

Thereafter, in conjunction with ZCDMW's development of the property, on January 8, 2004, an Order was entered by the Circuit Court of Fairfax County approving the appointment of Jamshid Varza, Esfandiar Anoushiravani, Keikhosro Mobed, Mehraban Shahrvini, and Daryoush Jahanian, as Trustees of RGF.   (App. 36-37)   There was nothing in the Order to indicate that the persons identified as Trustees in the Deed and/or that the persons identified in the Trust Agreement were not and/or did not continue to serve in that capacity.

On or about July 1, 1991, RGF, as Lessor, and ZCDMW, as Lessee, entered into a Lease for the Vienna Property for a term of ninety nine (99) years for a total rent of $99 payable at the rate of $1 per year ("Lease").   (App. 38-54)   The Lease was executed on behalf of RGF by Rostam Sarfeh and Rostam Ghaibi, with Mr. Ghaibi also being identified as the "joint secretary." Only Rostam Sarfeh is identified as a Trustee in the three operative documents: the Trust Agreement, the

Deed, and the Lease.    Rostam Ghaibi is identified as a Trustee in the Deed, but not in the Circuit Court's Order or in the Trust Agreement itself.

In addition to the payment of the rent, the Lease provided that ZCDMW was responsible for payment of the real estate taxes, insurance, and for maintaining the property.    RGF warranted to ZCDMW that it would have quiet and peaceable possession of the property.    Lease, Art. XXV.    The Lease also provided that ZCDMW was to use the property for the "construction of a place of worship for all Zoroastrians of the world and as a facility for practice of the Zoroastrian religion, customs and traditions."    There are no deadlines, time frames, or other requirements regarding construction of any such facilities on the property.    Lease, Art. VI.    Any notices under the Lease are required to be sent via registered or certified mail, postage prepaid, addressed to the Lessee at the leased premises or such other address as Lessee shall have specified by written notice to Lessor. Lease, Art. XVII

ZCDMW has invested hundreds of hours and thousands of dollars in efforts from planning and designing a worship facility, to seeking to obtain the necessary approvals and permits for construction, including a special exception from Fairfax County.    (A. Comp. ¶6)    As part of those efforts, RGF executed a Deed of Dedication and Easement to the Fairfax County Board of Supervisors.    (App. 162A), ("Deed of Dedication").    In that Deed of Dedication, RGF dedicated certain

portions of the Vienna Property to Fairfax County for use as public streets and for various easements, including a "Storm Drainage and Flood Plain Easement," a "Conservation Easement," a "Public Access Easement for the purpose of ingress and egress by the public, and an "Ingress Egress Easement for the purpose of ingress and egress by County Emergency, Maintenance and Police Vehicles over and across the Property of Owner [RGF]." The Deed further specifies that RGF has the obligation to "properly maintain the property and said facilities." In exchange, RGF received a density credit for the portion of the property dedicated as public streets.

On January 1, 2009, a purported Lease Amendment was executed by the parties. (App. 55-56) Paragraph 3 of that document ostensibly established a deadline of March 15, 2011 for completion of the worship center on the Vienna Property. During the course of his deposition, Dr. Jahanian repeatedly testified, affirmatively and unequivocally, that the Lease Amendment was prepared by ZCDMW and that the deadlines therein were suggested by them, without any request or input from RGF. (App. 635:10-22; 636:1-22; 637:1-22; 638:1-22; 639:1-22; 649:9-22; 650:1-15) Subsequent to the deposition, counsel for RGF orally confirmed that Dr. Jahanian's testimony was not correct, that in fact it was RGF who prepared the Lease Amendment. This is confirmed by a letter dated December 31, 2008, written in Farsi by Dr. Jahanian and sent to Mr. Shahryary,

ZCDMW's representative.  (App. 639:1-6)  Translated into English, it states as
follows:

> Mr. Farhad Shahryary, Please sign three copies of the
> Lease Amendment [printed in English] mail two signed
> copy to me and keep one.  Happy New Year to you and
> your family.  God willing with your effort and your group
> and cooperation    of Zoroastrians in Washington the
> construction of the Temple in Washington be started.

On February 22, 2010, ZCDMW sent an email to RGF informing it that the
zoning change that it had obtained on the Vienna Property that permitted the
building of the worship center had been extended by Fairfax County to 2014.   (App.
789-790)  In an email response sent about two hours later, RGF advised ZCDMW
that it had determined to join forces with another entity, the Kamran Foundation, and
directed ZCDMW to stop work on the Vienna Property.   The Kamran Foundation,
was headed by Mr. Kamran (also known as Mr. Camran), who was working on
building a Zoroastrian worship center in Boyds, Maryland (the "Kamran Temple").
(App. 656:13-22;  657:1-9;  789-790)   In that email, Dr. Jahanian stated that
construction of the Kamran Temple was a certainty, and that as soon as the
architectural plan was approved by the county and a dispute regarding a drainage
tunnel had been resolved, a "joint plan" should be announced.   The joint plan being
referred to was RGF's decision to shift the use the funds which had been raised by
ZCDMW for construction of a temple on the Vienna Property to construction of the
so-called Kamran Temple in Maryland.  RGF further advised that they wished to

engage a C.P.A. to audit ZCDMW's accounts to find out each donor's share so that the funds that had been spent on maintaining the Vienna Property could be "substituted" before "we" begin working with Mr. Camran. (App. 662:4-22; 663:1-9; 679:21-22; 680:1-15; 789-790)  RGF followed up its first email to ZCDMW less than thirty (30) minutes later, with Dr. Jahanian "correcting" his earlier email, stating that the architectural plan and zoning had been approved and that Mr. Camran was waiting for the building permit; as soon as that was done, Mr. Camran would inform them when to announce their "joint plan." (App. 789-790)

Dr. Jahanian acknowledged in his deposition that because of RGF's decision to support the Kamran Temple, RGF would not support construction of a worship center on the Vienna Property. (App. 681:7-10; 682; 682:1-10; 683:2-7)  RGF also made it clear that the building of the Kamran Temple would make fund raising for the building of the Vienna temple "impossible."  Accordingly, RGF directed ZCDMW to stop its efforts to construct a worship center on the Vienna Property. (App.792)

On March 5, 2010, the parties had a telephone conversation in which RGF reiterated its position that ZCDMW was to stop its construction efforts and throw its support behind the Kamran Temple.  RGF was of the view that ZCDMW was lying about the number of Zoroastrian families in Northern Virginia who would support a Virginia temple, and also that ZCDMW had failed in its fundraising efforts. (App.

677:14-22; 678:1-16,19-21; 679:16-22; 680:1-15; 294:11-22; 295:1-21; App. 793-794)

RGF confirmed its position in an email of March 7, 2010 to ZCDMW in which it specifically referenced the March 5, 2010 telephone call and re-stated that the "decision has been made" to support Mr. Camran's project and that "once the building permit was issued, to make it public." RGF again directed ZCDMW to cease its efforts with regard to the Vienna Property, inclusive of signing any contracts and writing any checks, and to attempt to obtain a refund of any sums paid toward a contract for which work had not yet begun. RGF also told ZCDMW, once again, that it should hire a C.P.A. to audit its accounts so that a determination could be made of the amounts that had been expended for taxes, legal fees, and architectural fees. (App. 791)

On April 28, 2010, ZCDMW wrote to RGF and again expressed their disagreement with its assessment of the situation, expressly noting that by ceasing its development efforts, RGF could use it as basis to claim that ZCDMW missed the purported deadlines in the Lease Amendment. ZCDMW closed the letter by stating it intended to stay on course. (App. 472-473) RGF responded with a long diatribe of its complaints about ZCDMW, and once again, reiterated its position in no uncertain terms: it was going to support Mr. Camran's temple, and instructed ZCDMW to turn over its financial records and support "one common cause."

(App. 474-475)

Notwithstanding its disagreement with RGF's assessment of the situation, ZCDMW did as RGF requested and ceased its activities. (App. 296:15-22; 297:1-22)   Mr. Shahryary testified that it was not until at least April 2011 that ZCDMW was able to renew its construction efforts, including its fund raising efforts.   (App. 301:8-22; 303:1-5) Not by coincidence, the April 2011 timeframe is the same date that the parties met and agreed to rejoin forces, executing a Memorandum of Understanding to that effect—discussed in more detail below. Dr. Jahanian effectively confirms the foregoing stating that it was "after we signed the memorandum" that RGF agreed to go with a second temple. (App. 652:8-14)

Lest there be any doubt regarding its position in 2010, RGF sent another email to ZCDMW on August 16, 2010 stating that because Mr. Camran's project is under way, "there is no need for the second one and remembering all the circumstances it will be impossible to CARRY ON WITH THE FUND RAISING. The trust of Guiv foundation would like to have another telephone conference to negotiate release of the funds toward this goal....we look forward to settle this final issue."   The "final issue" was the turnover of ZCDMW's funds to RGF so that those funds could be used to support construction of the Camran temple.   (App. 689:5-22, 690:1-17; 792)

RGF's position did not change through the remainder of 2010.   Reflective of

the same is an email dated October 24, 2010 that was a report of the discussions of a meeting the preceding day. In that meeting, Dr. Jahanian, Dr. Shahrvini, Dr. Sorooshian, and K.E. Mehrfar "discussed and agreed" unanimously "that there is need for only one Zoroastrian temple in Washington DC, that being the Kamran Temple, and that building of the Vienna Temple was "inappropriate and should be avoided." They also discussed selling the Vienna Property and obtaining control of the ZCDMW's funds to help Mr. Kamran's initiative. " (App. 793-794)

As the title holder of the Vienna Property, ZCDMW could not obtain bonds that were required by Fairfax County, nor pull any permits, without RGF's execution of the requisite paperwork. While there is no doubt that RGF was aware of this fact, the point was made clear in ZCDMW's email to RGF of November 13, 2010 wherein it related to RGF that its actions had hindered the process of building the Vienna worship center, and that RGF's failure to complete paperwork required of it was holding up construction efforts. (App. 795)

RGF's efforts to stymie ZCDMW's progress continued into early 2011. On March 31, 2011, RGF sent an email to ZCDMW to set up a meeting in a further effort to have obtain the release of ZCDMW's funds and take possession of the Vienna Property. In addition to advising of the time and place of the meeting, RGF stated that at that meeting "We will give you the full history of our activities and the reason why we decided to ***stop construction activities*** on Hunter Mill." With

reluctance, Dr. Jahanian confirmed in his deposition that the foregoing statement was true and accurate. (App. 702:5-11; 704:22, 705:1-9; Depo. Ex. 7, App. 796)(emphasis added) The March 31, 2011 email also confirms that RGF had information regarding the total donations received by ZCDMW as well as the amount that had been expended therefrom, and told ZCMDW that if those numbers were not correct to let it know. (App. 709:2-12) ZCDMW never disputed the accuracy of those numbers.

RGF's position changed rather suddenly after a meeting with Mr. Kamran and other members of his family, who constituted the Kamran Foundation, on April 15, 2011. At that meeting, RGF was informed that Mr. Kamran would release his ownership of the temple not to RGF but to the Zoroastrian Association of Metropolitan Washington, Inc. ("ZAMWI"), but only on the condition that he retained "full veto authority" over any decision regarding the temple, which veto power would extend to all matters, inclusive of financial issues, the day to day use of the temple facilities, and the hiring and firing of staff—including that of the Mobed (Zoroastrian Priest). Mr. Kamran also made it clear that his veto power would pass to his designated representative upon his death. (App. 175:17-26; 176:12-22; 736:10-11; 798-799) In short, Mr. Kamran, and thereafter his designated representative, would retain total and absolute control over the Kamran Temple in perpetuity.

˅12˅

The following day, April 16, 2011, RGF and ZCDMW met to discuss the status of matters. As of that point in time, RGF had not provided any form of notice, much less the requisite registered or certified mail notice, that it had cancelled the Lease pursuant to the terms of paragraph 3 of the Lease Amendment (without conceding that they had the ability to do so) for failure of ZCDMW to complete the Darb-E-Mehr by March 15, 2011. (App. 718/22; 719:1-10; 721:17-22) By the end of that lengthy meeting, RGF had changed its position completely, and determined that it wished to move forward with development of the Vienna Property. That agreement was reflected in a Memorandum of Understanding which was handwritten at that meeting by a representative of RGF, and executed by three (3) persons who were represented to be Trustees of RGF (D. Jahanian, K. E. Mehrfar, and what appears to be S. Sorooshian), and by ZCDMW itself (hereinafter "MOU"). (App. 738:7-11; 739:8-9; Depo. Ex. 8, App. 798; Shahryary Depo., App. 326:6-22; 327:1-22) Mr. Shahryary testified as well that as a result of the April 16, 2011 meeting and MOU, it was understood that the Lease Amendment was no longer effective. (App. 266:17-19)

On May 15, 2011, ZCDMW provided a report to RGF as required by the MOU. (App. 496-498) On May 19, 2011, RGF responded, confirming that the decision to proceed with the Vienna project had been made, and noted that the first step was to engage in fund raising, advising ZCDMW to be sure that there were

adequate funds to complete the project before initiating construction. The email also confirmed the accuracy of the financial information previously provided by ZCDMW and which was in RGF's possession. (App. 800-802)

RGF produced no further communications between it and ZCDMW between the email of May 19, 2011 and April 17, 2013, inclusive of any requests by RGF for additional information, financial or otherwise. (App. 748:17-22; 749:1:17; Depo. Ex. 11, App. 803) In particular, at no time after ZCDMW's email of May 15, 2011 did RGF communicate to ZCDMW that the information which it had previously been provided was not sufficient (App. 749:19-22; 750:1) Furthermore, at no time thereafter did RGF ever request to get together with ZCDMW to discuss and/or come up with an accomplishment plan with milestones and/or deadlines. (App. 750:2-12) In fact, at no time after the signing of the MOU did RGF ever suggest to ZCDMW in any form or fashion, that there were any concerns regarding ZCDMW's progress on the temple construction project. ZCDMW had, in fact, renovated a building on the Vienna Property and was using it for meetings and prayers—the last such meeting having taken place the very Sunday prior to Mr. Shahryary's January 2014 deposition. (App. 270:19-22; 271:1-6)Moreover, as of the date of that deposition, RGF had never undertaken any action to maintain the Vienna Property, nor had it ever paid any expenses of any kind related to the same, including real estate taxes or insurance. (App. 675:5-22; 676:1-14) Those items were being

˅14˅

done and/or paid for by ZCDMW.

Notwithstanding the foregoing, as well as the parties' course of dealings over a number of years, on April 17, 2013, Dr. Jahanian sent an email to ZCDMW in which he stated that the Vienna Property should be released for sale and the proceeds used for various the Zoroastrian community centers.  (App. 803)  A few days later, on April 20, 2013, Dr. Jahanian sent a letter to ZCDMW in which RGF was purportedly terminating the Lease "effective immediately" pursuant to the terms of the January 1, 2009 Lease Amendment.  (App. 499-500)  RGF never produced a resolution or authorization of any kind or character authorizing the email of April 17th or the letter of April 20th.  Moreover, Dr. Jahanian himself testified that there was no meeting of the Trustees that authorized the sending of the same. (App 750:14-22; 751:1-22; 752:1-22; 753:1-70)

In light of the RGF's efforts to oust ZCDMW from possession of the Vienna Property, ZCDMW filed a declaratory judgment action in the Circuit Court of Fairfax County.  As title to the subject property was in the name of the Trustees, and as under the terms of the Trust Agreement itself the property of the Trust was vested in the Trustees, in addition to RGF, the Trustees identified in the Deed and the Trustees identified in the Order of the Circuit Court of January 8, 2004 as Defendants.  (App. 26-33)  RGF filed its Notice of Removal and supporting memorandum in the U.S. District Court for the Eastern District of Virginia

contending that there was complete diversity between parties and that the District Court therefore had jurisdiction over the matter pursuant to 28 U.S.C. §1332. (App. 20-57, 62-70)  ZCDMW responded with its Opposition to Removal and Motion to Remand and supporting memorandum.  (App. 85-100)  RGF thereafter filed is Reply. (App. 111-119) In pertinent part, RGF's Reply contained an affidavit of Dr. Jahanian, an unauthenticated document purporting to be a C.V. of Soroosh Sorooshian, some unauthenticated correspondence/emails from Dr. Jahanian, one unauthenticated document purporting to be a letter dated April 15, 2005 from a "K. Mobed" resigning his position as Trustee, a copy of what RGF contended was the operative Trust Agreement, and a copy of the Deed of Dedication to Fairfax County.

After oral argument on the Motions, the District Court issued its Order of September 25, 2014, reserving judgment on removal "until the parties have presented conclusive evidence of the Defendant's [RGF's] citizenship…and additional evidence related to the trust's beneficiaries." (App. 165)   In the foregoing Order, the District Court noted that neither the U.S. Supreme Court nor this Circuit had addressed the manner in which the citizenship of a trust was to be determined, and adopted the methodology utilized by the 3rd Circuit in *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F. 3d 192 (3d Cir. 2007).   In that case, citizenship of a trust was determined by looking at the citizenship of both the trustees and the trust beneficiaries.   In assessing who the beneficiaries of the RGF

Trust were, the District Court stated that "By seeking enforcement of the lease, ZCDMW is seeking to become a beneficiary of the Trust through this litigation. At the current moment, however, Rustam Guiv does not appear to have any beneficiaries." (App. 165) Notwithstanding that ZCDMW's Complaint was to declare that subject Lease was if fact in full force and effect, meaning that it already was a beneficiary of the Trust, the District Court's ruling on the removal issue was to find just the opposite—that the Lease was not in effect and therefore ZCDMW was not a beneficiary of the Trust. As will be detailed later in this Brief, that ruling effectively ended this case—at a stage of the proceedings long before any evidence had been taken regarding the validity of the Lease and/or the MOU.

Pursuant to the District Court's Order, the parties submitted their Supplemental Memoranda (App.167-188) RGF's supplementation consisted of another affidavit of Dr. Jahanian, unauthenticated copies of what purported to be driver's licenses, an unauthenticated identity card from Canada, and another unauthenticated document mostly illegible containing a photo of someone on it and the name "Mehraban Shahranvini Yazdi." The District Court declined to hear further argument on the matter, and on October 22, 2013, issued its Order finding that removal was proper. (App. 189)

At the time of the filing of its Notice of Removal, RGF also filed a Motion for Judgment on the Pleadings. After fully briefing the issue, the District Court denied

the request, without prejudice to refiling of the same. (App. 58-61; 62-70; 85-92; 93-100; 101-110; 163-166)   RGF thereafter filed a Renewed Motion for Judgment on the Pleadings on October 25, 2013, which Motion also was denied after being fully briefed and argued.   (App. 190-192; 193-205; 213-222; 223-229; 230-237; & 238)   ZCDMW was granted leave, by consent order, to file an Amended Complaint, with the Amended Complaint being filed on January 15, 2014 and RGF's Answer thereto on March 14, 2014.   (App. 833, 834-843, 1018)   In response, RGF filed a Motion to Dismiss for Failure to State a Claim.   RGF's motion, after being fully briefed, was once again denied by the Court without oral argument.   (App. 877-80; 881-889; 890-899; 900-907; 987-990)

Both ZCDMW and RGF filed Motions for Summary Judgment along with supporting Memoranda on February 28, 2014.   After the submission of their respective Oppositions and Replies, as well as oral argument, the Court issued its Memorandum Opinion and Order of May 12, 2014, finding that ZCDMW had breached the Lease as amended by the Lease Amendment of January 1, 2009, and that RGF had exercised its right to terminate the same on April 20, 2103.   The District Court also found the MOU to be too vague to be enforceable. In addition, the District Court found that RGF was not estopped from enforcing the deadline in the Lease Amendment based upon its view that ZCDMW's letter of April 28, 2011 indicated it had not changed its position in response to RGF's directive to cease

construction.   The Court's Order left open the option for RGF to request fees and costs under the terms of the Lease. (App. 908-909; 910-931; 991-1012; 1027-1065; 1100-1120; 1123-1134; 1135-1156; 1159-1175 & 1176)

On June 9, 2014, RGF filed its Motion and supporting Memorandum seeking attorney's fees and costs, and on that same date, ZCDMW filed its Motion for Reconsideration.    After further briefing, including the filing of respective oppositions and replies, the District Court entered its final Order of July 22, 2014 in which it denied the ZCDMW's Motion to Reconsider and granted, in part, RGF's Motion for attorney's fees and costs.   (App. 1177-1179; 1180-1190; 1219-1231; 1232-1233; 1234-1243; 1244-1255; 1256-1265; 1281-1288; 1289-1294)

On August 19, 2014, ZCDMW timely filed its Notice of Appeal to the Orders of May 12 and July 22nd.   (App.   1295-1297)

## SUMMARY OF THE ARGUMENT

I.  The District Court's finding that removal of this matter from the Circuit Court of Fairfax County was proper was in error as RGF failed to carry its burden of proving not only the identity of the Trustees of RGF, but also that there was complete diversity.   Despite the burden being on RGF, the District Court improperly shifted the burden, in part, to ZCDMW to establish that diversity did not exist.

It also cannot be over emphasized that the District Court's ultimate determination that complete diversity existed hinged on its finding, at the removal stage, that the subject Lease had, in fact, been terminated and thus ZCDMW was not a beneficiary of the Trust. Such a finding, before any evidence on the issue is submitted to the District Court, cannot be supported under any theory.

The District Court's finding in this regard brings up an even more troubling concern with its determination. Given that the District Court found that its subject matter jurisdiction was dependent on the Lease not being in existence, it had no alternative but to adhere to that position in reaching its final decision. To do otherwise would mean that the District Court's initial determination that there was diversity was incorrect; that, in turn, would mean that the District Court never had jurisdiction over the matter in the first instance, and thus all of the time, effort and expense of the District Court proceedings were for naught. In short, the District Court boxed itself into a position at the initial stage of the proceedings, which in and of itself is impermissible.

The evidence before the District Court also conclusively demonstrated that through the Deed of Dedication, the County of Fairfax and the general public were beneficiaries of the Trust through various easements, inclusive of easements for storm drainage, flood plain, conservation, and for "Public Access/County Ingress

Egress." RGF received a benefit in exchange, a density credit for the portion of the property dedicated as public streets.

II.    The granting of summary judgment is only permissible when there are no material issues of fact in dispute. In this instance, the District Court's decision was predicated upon the affidavit and deposition testimony of the parties. That testimony differed in material respects. Even more significantly, ZCDMW demonstrated that RGF's designated representative had provided testimony at his deposition on a key point that was not true. Furthermore, in his deposition, Dr. Jahanian went to great lengths to avoid answering questions, often requiring counsel to repeat the question multiple times in an effort to obtain a response; in other instances, Dr. Jahanian either refused outright to respond, or never did respond to the actual question. Accordingly, the District Court's granting of summary judgment when material issues of fact were in dispute, inclusive of the credibility of witnesses, was in error.

III.    The District Court's finding that ZCDMW breached the subject Lease, as Amended, by failing to timely construct the Darb-E-Mehr on the leased property was in error. The evidence showed that after a meeting between RGF and Mr. Kamran and members of his Foundation on April 15, 2011, RGF had an about face and decided it wanted to continue its relationship with ZCMDW and support the building of a temple on the Vienna Property. Representatives of RGF and

˅21˅

ZCDMW meet the following day, and after a long discussion, entered into a Memorandum of Understanding ("MOU") that was intended to, and did in fact, supersede the Lease Amendment.    The meeting and the execution of the MOU were on April 16, 2011—more than 30 days after the supposed drop dead date of the Lease Amendment.    If, as RGF suggested, the Lease was subject to termination at that point, there would have been no reason for the meeting and/or the MOU.

The parties intended the MOU to be binding and enforceable, and to supersede the Lease Amendment.    The MOU, prepared by RGF, had explicit terms and conditions which the parties fully understood and by which they fully intended to be bound.    The conduct of the parties likewise demonstrated that they intended to be bound.    Dr. Jahanian in subsequent correspondence and in his deposition made that clear.    In addition, in RGF's Memorandum in Support of its own Motion for Summary Judgment, effectively adopted the allegations of ¶14 of ZCDMW's Amended Complaint in which it was specifically alleged that he MOU "set forth revised terms for the construction of a Darb-e-Mehr on the Vienna Property and had the effect of superseding the Lease Amendment."    By adopting paragraph 14 of the Amended Complaint in their Memorandum, RGF was bound by the allegations of that paragraph.    Accordingly, RGF conceded that the MOU was intended to, and did in fact, supersede the Lease Amendment.    At a minimum, it created an issue of fact to be determined at trial.

IV.    Even if the Lease Amendment remained in effect, which ZCDMW disputes, RGF either is estopped or is deemed to have waived any requirements related to the commencement and/or completion dates of construction by its own actions in directing ZCDMW to cease and desist its construction activities during the time frame it is undisputed the Lease was in full force and effect.    ZCDMW did as it was instructed.

The District Court based its finding that there was no estoppel upon a letter of April 28, 2011 which it construed as evidence that ZCDMW had not changed its position in response to RGF's directives.    However, it was uncontroverted that ZCDMW did, in fact, stop its efforts at construction.    The letter in question confirms the same, as does the deposition testimony of ZCDMW's representative, Mr. Shahryary.    Moreover, the decision by ZCDMW to restart its efforts was not made until more than 2 months after RGF first directed it to cease its efforts.    The District Court also wholly ignored two additional points.    The first was the uncontroverted testimony of Mr. Shahryary in which he stated that because of the stoppage, it took ZCMDW until at least April 2011 to resume its efforts—that being the same timeframe during which RGF decided to rejoin forces with ZCDMW. The second is that RGF acknowledged and emphasized that so long as it was supporting the construction of the Kamran Temple, it would be "impossible" to raise funds for the construction on the Vienna Property.    RGF also refused to executed

the paperwork necessary to obtain bonds for the project. Accordingly, by its own actions, RGF effectively prevented ZCDMW from meeting the deadline in the Lease Amendment, even assuming that deadline still existed.

V. The District Court also overlooked another uncontroverted fact. ZCDMW had obtained rezoning of the Vienna Property so that it could use the site as a place of worship (not a small matter in and of itself as it took litigation that went all the way to the Virginia Supreme Court to finalize), and had renovated a building on the site, which building was, in fact, being used as a Darb-e-Mehr for worship and practice of the Zoroastrian religion, customs and traditions. As Mr. Shahryary testified, that facility had been used for those purposes as recently as the Sunday before his January 2014 deposition. Had RGF wanted to include architectural guidelines, size requirements or the like in the Lease or the Lease Amendment for the Darb-e-Mehr, it could have done so. However, there is nothing in the Lease or the Lease Amendment that mandates that any particular type of center be constructed. Accordingly, even if the Lease Amendment was operative, not only did RGF fail to show that ZCDMW had not complied with the Lease, as Amended, the uncontroverted evidence disclosed that it had complied.

VI. The District Court's awarded attorney's fees to RGF for its efforts across the entirety of the case—despite the fact that the only two issues on which is prevailed were those of removal and summary judgment. It was not the prevailing

party on two separate Motions for Judgment on the Pleadings, or on a Motion to Dismiss. A substantial amount of the fees and costs it claimed were for efforts relating to those matters. Moreover, RGF made no effort to distinguish between the fees it charged for matters on which it prevailed and on matters which it did not. In addition, its fees were not reasonable. The use of multiple attorneys to do the same work, billing for discussions and conferences between the various attorneys, and simply over lawyering the case in many instances, needlessly increased the cost of the litigation—as best shown by the fact that the attorney's fees charged by ZCDMW's counsel for the identical work was about 1/3 of the claim made by counsel for RGF for the actual work it performed.

## ARGUMENT

**I. The District Court's finding that removal of this matter from the Circuit Court of Fairfax County was proper was in error as RGF failed to carry its burden of establishing diversity, and because, in fact, there was not complete diversity; the determination of the citizenship of a trust is a matter of first impression in this Circuit.**

This Court's review of the District Court's finding that removal was proper is *de novo. Barbour v. Int'l Union*, 640 F.3d 599, 605,190 L.R.R.M. (BNA) 2093 (4th Cir., 2011); s*ee also Payne ex rel. Estate of Calzada v. Brake,* 439 F.3d 198, 203 (4th Cir.2006) ("For questions concerning removal to federal court, our standard of review is *de novo.*"). In conjunction with that review, certain fundamental principles are to be observed. The first and foremost is that Federal courts are

courts of limited jurisdiction and possess only that power authorized by the Constitution and statutes enacted pursuant to that Constitutional grant of authority. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). It is to be presumed that "a cause lies outside this limited jurisdiction ... and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id; Johnson v. Advance Am.,* 549 F.3d 932, 936 (4th Cir. 2008). Removal statutes, in particular, must be strictly construed because the removal of cases from state to federal court raises significant federalism concerns. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *see also Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."); *Maryland Stadium Auth. v. Ellerbe Becket, Inc.,* 407 F.3d 255, 260 (4th Cir.2005) (noting the duty to construe removal jurisdiction strictly because of the significant federalism concerns implicated by removal). Because of the foregoing, any and all doubts about the propriety of removal should be resolved in favor of remanding the case to state court. *Shamrock Oil, supra; Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 816 (4th Cir.2004)( *en banc* ); *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 425 (4th Cir.1999).

In reaching its conclusion that removal was proper, the District Court observed that neither the U.S. Supreme Court nor this Circuit had addressed the issue of how to determine the citizenship of a defendant-trust for purposes of diversity jurisdiction.   The District Court ultimately adopted the Rule enunciated in the 3rd Circuit's decision of *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F. 3d 192 (3d Cir. 2007), which was followed by the District Court for the Western District of Virginia in *Poulos v. GeoMet Operating Co.*, 2013 WL 2456044 (W.D. Va. June 6, 2013).   That decision held that the citizenship of a trust is determined by looking at the citizenship of both the trustees and of the trust beneficiaries.   The District Court did not consider the location of the assets of the RGF Trust, in this case, a six plus acre parcel of real estate in Fairfax County.   That asset is, by a wide margin, the most significant asset of the RGF Trust.

In Virginia, necessary parties to litigation are all persons "…natural or artificial, however numerous, materially interested either legally or beneficially in the subject matter or event of the suit…and without whose presence in court no proper decree can be rendered in the cause….This rule is inflexible, yielding only when the allegations of the bill state a case so extraordinary and exceptional in character that it is practically impossible to make all parties in interest parties to the bill…." *Allen v. Chapman,* 242 Va. 94, 98, 406 S.E.2d 186, ___ (1991). Following this rule, all persons having an interest in the real property which is the

subject matter of the suit are necessary parties and must be made a party to the suit. *County of Fairfax v. First Virginia Bank,* 19 Cir. L123017, 31 Va. Cir. 124 (1993), ftne 1.

According to the Deed by which RGF acquired title to the Vienna Property, the real estate was held in the name of the following persons:   Daryoush Jahanian, Rostam Sarfeh, and Rostam Ghaibi.    (App. 34)    In conjunction with the development of the subject real estate by ZCDMW, on January 8, 2004, the Circuit Court of Fairfax County entered an Order identifying the following additional persons as Trustees of RGF: Jamshid Varza, Esfandiar Anoushiravani, Keikhosro Mobed, and Mehraban Shahrvini.   (App.   36-37)    Those same four persons are the individuals who granted the easements and other rights in the Vienna Property to the County of Fairfax and to the public in the Deed executed shortly thereafter on May 17, 2004.   (App. 162A)

Lest there be any doubt that the Trustees are necessary parties to the litigation, the Trust Agreement itself, in paragraph 2, expressly provides that the property of the Trust is "vested in the Trustees."   (App. 146)   Thus, as it was required to do, ZCDMW named as Defendants in the state court action each of the individuals identified in the Deed and in the later Fairfax Circuit Court Order as the Trustees of RGF; none of those Defendants were "fraudulently joined" so as to defeat diversity. (App. 26-33)

Among the failings of RGF to carry its burden of proof that removal was proper was its failure to establish the identity of the Trustees of the RGF Trust—the real parties in interest. Absent that threshold determination, it was impossible for the District Court to decide whether diversity existed. The version of the Trust Agreement submitted by RGF identified Jamshid Guiv, Rostam Sarfeh, Shari Merabi, B. Kaviani, Faorkh Patel and Morvarid Guiv as the Trustees of RGF. However, of those six (6) persons, only one—Rostam Sarfeh, was a named Defendant in the Complaint filed by ZCDMW in the state court.

In its Notice of Removal, RGF acknowledged that two of the named Defendants, Mehraban Shahrvini and Daryoush Jahanian were Trustees—although Mr. Shahrvini was not listed as a Trustee in the Trust Agreement—but asserted that both were "fraudulently joined." RGF went on to contend that the remaining five (5) persons named in the Complaint were no longer Trustees and also were "fraudulently joined." However, it produced nothing to support this contention beyond the statement of its counsel. (App. 20-57)

The inadequacy of RGF's contentions regarding the identity of its Trustees is made clear by the terms of the very Trust Agreement it submitted as being the operative document. Paragraph 7 thereof provides that each Trustee serves until their death, resignation, removal or incapacity. It further provides that any vacancy created by the foregoing is to be filled by a majority vote of the remaining Trustees.

Paragraph 5 details how the votes of the Trustees are to occur: either by resolution at a meeting or written record of a vote of the Trustees without a meeting. That provision of the Trust Agreement also requires the Trustees to appoint a secretary "who shall cause a record to be kept of all actions of the Trustees." Again, at no time did RGF provide any resolution adopted at any meeting of RGF or any "written record without a meeting" identifying how the persons listed in the amended Trust Agreement purportedly became the Trustees of the Trust—all but one (1) of which, Rostam Sarfeh, were different from the persons identified in the Deed and the Circuit Court Order.

ZCDMW submitted its Opposition to RGF's efforts at removal pointing out the deficiencies of RGF's position. In its Reply, RGF submitted some additional documentation in an effort to overcome the opposition. However, it is to be emphasized that RGF did not then, nor did it ever, produce any minutes of meetings, consents in lieu of a meeting, or other records of the Trust establishing the identity of the Trustees, much less what became of the persons listed in the Deed and the Circuit Court Order of January 8, 2004. Instead, what RGF submitted was the following:

--An Affidavit from Dr. Jahanian restating what counsel alleged in footnote 1 to the Notice of Removal; that in addition to Dr. Jahanian and Mr. Shahrvini, Soroosh Sorooshian, Dr. Bruce (Borzoo) Nadjmi, Mehraban Shahrvini and Khosro E. Mehfar were the Trustees of RGF, making a total of five (5) Trustees

in all.  None of the foregoing persons are identified as Trustees in the Trust Agreement produced by RGF.  Dr. Jahanian's affidavit goes on to state that Rostam Sarfeh, one of the persons who was identified as a Trustee in the Trust Agreement, died.  However, there is nothing to corroborate Mr. Sarfeh's death and/or Dr. Jahanian's hearsay statement.

Moreover, there is no mention whatsoever by RGF in its Reply as to what happened to the four (4) other persons named as Trustees by the Trust instrument—the very instrument RGF contends was the operative document of the Trust: Jamshid Guiv, Shari Merabi, B. Kaviani, Faorkh Patel or Morvarid Guiv (App. 120-125) RGF simply ignored the issue.  RGF also made no effort to address what happened to those four persons in its Supplemental submission, also addressed below.  This alone is fatal to its efforts at removal—under any standard, it wholly failed to carry its burden of proving diversity of the parties.

--An email authored by Dr. Jahanian dated August 12, 2007 in which he recites that Esfandiar Anoushirvanini had resigned and, supposedly in a phone call among unidentified persons, that Dr. Bruce (Borzoo) Nadjmi had been elected as a Trustee (App. 134), there is nothing other than this email to confirm his resignation; Dr. Jahanian's email is not authenticated in any manner, nor is it a record of the Trust maintained by its Secretary as required by the express terms of the very Trust Agreement that RGF tendered to the Court as the operative document;

--A document apparently authored by Dr. Jahanian dated June 25, 2000 in which he states that Mehraban Shahrvini had been elected as a Trustee after "contact with the other Trustees" who voted in favor of his election by a vote of 3 to 1 (App. 135). Again, not only is this document not a record by the secretary of a meeting as required by Paragraph 5 of the Trust Agreement, it is inconsistent with Dr. Jahanian's affidavit in which he asserts there are five (5) Trustees; the document itself is not authenticated in any manner;

--Another document authored by Dr. Jahanian dated May 1, 2005 in which he writes that Kaikhosrow Mobed has resigned as a Trustee and that by "unanimous votes" Dr. Khosro E. Mehrfar has been approved as a new Trustee. That same writing states that Dr. Shahvini was contacted by phone and that Mr. Varza and Mr. Anoushirvanini emailed their votes (App. 138). Neither the resignation nor the emails referenced by Dr. Jahanian were provided, or for that matter, any documentation as to how Mr. Mobed became a Trustee in the first instance. Moreover, as with the other documents, this document is not a record prepared by the secretary of the Trust, nor is it authenticated in any fashion;

--A letter from Dr. Jahanian dated August 12, 2007, supposedly written to Mr. Anoushirvanini confirming his resignation and the purported election of Dr. Nadjmi (App. 140); the purported resignation was never provided, nor was the

subject letter ever authenticated, moreover, it is not a record of the Trust prepared and/or maintained by the secretary of the Trust;

--What purports to be a letter to Dr. Jahanian from "K. Mobed" giving his resignation as a Trustee (App. 142); again there was nothing to establish that this was a record of the Trust itself;

--Another document authored by Dr. Jahanian dated July 25, 2005, stating that Jamshid Varza resigned as "trustee and secretary of the Rustam Guiv Foundation" and reciting a telephone communication in which Dr. Soroosh Sorooshian was elected to replace him as Trustee (App. 144)     That document, which again is not a record of the Trust maintained by the secretary of RGF, actually recites only one vote in favor of the election, with a subsequent email from Mr. Anoushirvanini supposedly giving "his vote of approval."

It also is of significance to note what the foregoing documentation does establish—that RGF had appointed a secretary, who by the express terms of the Trust Agreement is the person responsible for taking and maintaining the records of RGF, inclusive of records of votes regarding the appointment of Trustees.   RGF has never contended that Dr. Jahanian was its secretary or was the record keeper of RGF; to the contrary, in his deposition when asked whether RGF had a secretary, Dr. Jahanian said that it did, and identified Mr. Mehrfar as that secretary.   (App. 578:18-22)

Recognizing at least the deficiency of RGF's submission in support of removal, the District Court initially found that it had insufficient evidence to determine the citizenship of the purported Trustees or of the beneficiaries of the Trust. However, instead of remanding the matter to the state court, the District Court directed the parties to supplement their pleadings with additional "direct" and "conclusive" evidence of their citizenship. (App. 163-166) Given that the burden of providing diversity was squarely on the shoulders of RGF, the District Court's order placed an impermissible burden upon ZCDMW that it did not have, and constituted reversible error.

Moreover, at no time in any of its Orders and/or Opinions did the District Court address the lack of proof establishing the identity of the Trustees themselves. Without the fundamental question resolved as to who the Trustees of RGF were, it was impossible for the District Court to determine whether diversity existed.

In response to the District Court's request for additional evidence, RGF submitted a Supplemental Memorandum in Support of Removal which consisted of yet another Affidavit from Dr. Jahanian, and additional unauthenticated documents. (App. 169-188) The latter consisted of the following:

--an unauthenticated copy of a Kansas driver's license for Dr. Jahanian;

--an unauthenticated copy of a California driver's license for Khosro Esi Mehrfar;

--an unauthenticated copy of a California driver's license for Soroosh Sorooshian;

--an unauthenticated copy of a Rhode Island driver's license for Bruce Nadjmi;

--an unauthenticated copy of a document on which there were two photocopied objects, one being entitled "Identity Card" with a photograph and a name Shahrvini Yazdi Mehraban and below that some document mostly illegible with a photograph and the name Mehraban Shahrvini Yazdi.

The aforementioned affidavit of Dr. Jahanian purportedly identified the assets of RGF and recited that RGF had made an unspecified number of grants, but wholly failed to identify the grants nor any of the recipients thereof with one exception, the grant of $100,000 to the Kamran Foundation, Inc.

What RGF failed to produce is far more significant than what was produced. Despite being given a second opportunity to do so, RGF still did not produce any competent evidence as the identity of its Trustees, such as minutes of meetings where Trustees were elected, resolutions adopted by the persons validly situated as Trustees verifying the election, resignation and/or death of Trustees, and/or executed consents or the like of actions taken without a meeting. RGF also failed to produce any competent evidence of any resignations of the Trustees named in the

very document RGF submitted as being the Trust Agreement of RGF, much less proof of the deaths of any of the persons named therein.

Furthermore, RGF produced no evidence, much less "conclusive evidence" of the domicile of any of the Trustees.   As recognized in *Emerald Investors*, the very $3^d$ Circuit opinion followed by the District Court, residency does not establish citizenship.   492 F. 3d 192, 207 n. 24 (3d Cir. 2007).   Unauthenticated driver's licenses are not admissible as evidence, nor are they proof of citizenship/domicile. For example, all that is required in Kansas to obtain a driver's license is that the person be a resident of the state, domiciliary is not required.   Kan. Stat. 8-240(b)(4). Similarly, Rhode Island only requires residency, which is defined as someone who meets any of the following criteria: a person (1) who owns, rents, or leases real estate within the state as his or her residence and (i) engages in a trade, business, or profession in the state; or (ii) enrolls his or her children in a school in the state for a period exceeding ninety (90) days; or (2) who is registered to vote or is eligible to register to vote under the laws of the state. Rhode Island Code §§ 31-10-1; 31-1-18. The requirements for Shahrvini Yazdi Mehraban to obtain a Canadian Identity Card and/or for Mehraban Shahrvini Yazdi to obtain whatever form of identification RGF supplied on his/their behalf are unknown, and certainly not established in the record. Accordingly, based upon the lack of any competent evidence, much less "conclusive evidence," as to whom the Trustees of RGF are, or as to their domicile, RGF failed

to carry its burden to establish diversity—a burden that without question was its to satisfy.

Notwithstanding the foregoing deficiencies and lack of proof, by Order entered October 23, 2013, without further oral argument or opportunity for ZCDMW to respond, the District Court ruled that removal was proper and denied ZCDMW's opposition to the removal and request to remand the case to the state court. (App. 189)   The issuance of that Order was in error given RGF's wholesale failure to carry its burden of proof.

Ironically, what RGF's evidence did "conclusively" establish is the existence of a beneficiary in the Commonwealth of Virginia, specifically, the County of Fairfax.   Attached as Exhibit C to RGF's very own Reply in Support of Removal is a Deed of Dedication and Easement from RGF to the Fairfax County Board of Supervisors ("Deed").   (App. 162A-162V)   In that Deed, RGF dedicated certain portions of its Virginia Property, the same property which is the subject of this litigation, to Fairfax County for use as public streets, as well as various easements for other purposes, including a "Storm Drainage and Flood Plain Easement," a "Conservation Easement," and a "Public Access/County Ingress Egress" easement. The latter expressly provides that RGF grants to Fairfax County a "Public Access Easement for the purpose of ingress and egress by the public, and an Ingress Egress Easement for the purpose of ingress and egress by County Emergency, Maintenance

and Police Vehicles over and across the Property of Owner [RGF]." The Deed further specifies that RGF has the obligation to "properly maintain the property and said facilities." In exchange, RGF received a density credit for the portion of the property dedicated as public streets.

The foregoing Deed conclusively establishes that a beneficiary of RGF is the County of Fairfax. The County's status as a beneficiary of RGF exists so long as RGF is the owner of the property in question, and certainly existed at the time of the commencement of this litigation. Moreover, RGF has an ongoing obligation to the County to maintain the easements which it has granted to it, which obligations are also without limitation as to time.

While it is submitted that the foregoing is sufficient, in and of itself, to establish a lack of diversity jurisdiction, ZCDMW further submits that the very existence of the real estate in question also does so. As this Court noted in its initial Order regarding removal, the "Trust's beneficiaries are those 'qualified groups' who receive resources from the Trust in order to engage 'in the practice and advancement of the Zoroastrian Religion." As Dr. Jahanian said in his Affidavit attached as Exhibit 2 to RGF's Supplemental Memorandum in Support of Removal, the grants referred to are generally made informally, without any contract or the like. Consistent with its required purposes, at the time the subject litigation was instituted and throughout its continuation, the subject Property was being used by Virginia

citizens who were practitioners of the Zoroastrian religion, most of which were the members of ZCDMW. This was confirmed by the Supplemental Memorandum regarding removal submitted by ZCDMW, and specifically by the testimony of Farhad Shahryary of January 3, 2014, wherein he stated that the building on the Property had been renovated and was being used for prayers and meetings, with the most recent being "last Sunday"—which as of the time of the deposition would have been December 29, 2013. Accordingly, as of the time the litigation was commenced, and beyond a doubt, throughout the course of this litigation, there were beneficiaries of the Trust in the Commonwealth—those persons using the Property for Zoroastrian worship.

The nature and effect of the Court's ruling on the removal issue also cannot be ignored. ZCDMW argued at the time of the removal, and remains of the position, that it was a beneficiary of the Trust. However, the District Court opined that RGF had no beneficiaries, meaning that it had determined as of the time of the removal that the subject Lease had, in fact, been terminated by RGF and thus ZCDMW was not a beneficiary of the Trust. If, however, at the end of the proceedings after all of the evidence was submitted, if the District Court found that the Lease was in effect, by its own determination, there would be no diversity because ZCDMW, a Virginia citizen, was a beneficiary of the Trust. Accordingly, the Court's decision that the Lease was in effect would be a nullity because diversity did not exist. The District

˅39˅

Court's conclusion that ZCDMW was not a beneficiary of the Trust at the removal stage was made in spite of the Court's own observation that the status of ZCDMW as a beneficiary was "not clear on the record before the Court." As the burden to prove diversity falls solely upon RGF, and as the District Court is required to resolve all doubts regarding federal jurisdiction in favor of remand to the state court, its failure to remand was in error. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).

**II.    The District Court's granting of summary judgment when material issues of fact were in dispute, inclusive of the credibility of witnesses, was in error.**

The District Court's grant of summary judgment is reviewed *de novo*, applying the same legal standards as the District Court and viewing the facts and inferences drawn from the facts in the light most favorable to the nonmoving party. *Freeman v. Dal-Tile Corp.,* 750 F.3d 413, 419-420 (4th Cir. 2014). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment can only be granted where the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. In determining whether summary judgment is proper, the evidence presented must be taken in the light most favorable to the non-moving party. In sum and substance, summary judgment only should be granted when no reasonable jury could return a verdict in favor of the non-moving party. *Resource Bankshares Corp. v. St. Paul*

*Mercury Ins. Co., 407 F3d 631, 635 (4th Cir. 2005).*   Furthermore, when there is a conflict in the testimony and an issue as to the veracity of the witnesses, summary judgment is not proper.  *Logan v. General Fireproofing Company,* 521 F.2d 881, 884 (4th Cir. 1971) (A sexual discrimination case in which a grant of summary judgment was reversed, the 4th Circuit stating that "Whether the facts in the case, as finally established, are sufficient to sustain a charge of sex discrimination should, as a result of the conflict in the testimony and the issue of credibility, be determined not by summary judgment, but after trial, on a proper record….").

In this instance, there was a conflict in the testimony between Mr. Shahryary, the representative of ZCDMW, and Dr. Jahanian, who testified on behalf of RGF. Additionally, there was a conflict between Dr. Jahanian's testimony and his own affidavits.   More to the point, there were significant issues regarding the credibility of Dr. Jahanian.  For example, knowing full well the importance of the Lease Amendment, at his deposition Dr. Jahanian repeatedly testified, affirmatively and unequivocally that the Lease Amendment was prepared by ZCDMW and that the deadlines therein were suggested by ZCDMW, without any request or input from RGF.   (App. 635:10-22; 636:1-22; 637:1-22; 638:1-22; 639:1-22; 649:9-22; 650:1-15)  Obviously, he believed that by laying the responsibility for the Lease Amendment at the feet of ZCDMW, they could not be heard to complain about its

consequences. However, it was later confirmed by a letter dated December 31, 2008, written in Farsi by Dr. Jahanian himself, and sent to Mr. Shahryary that it was RGF, and specifically Dr. Jahanian, who was responsible for the preparation of the Lease Amendment. (App. 639:1-6; 1121) After the deposition, counsel for RGF also confirmed that Dr. Jahanian's testimony was not accurate.

The lack of Dr. Jahanian's credibility and the conflicting testimony becomes even more significant given this Court's finding that the Memorandum of Understanding of April 16, 2011 ("MOU") was "extremely ambiguous" and looked to the course of dealing between the parties to determine its enforceability. In his deposition testimony, Dr. Jahanian conceded that the execution of the Memorandum of Understanding of April 16, 2011 ("MOU") was recognition that RGF had changed its previous position in which it was adamantly opposed to two temples in the D.C. area. That is, the MOU was literally an about face wherein RGF was effectively withdrawing its previous directive to cease construction and now agreeing to have two temples, inclusive of the one on the Vienna Property being constructed by ZCDMW. (App. 738:9-109) This change of position could occur if, and only if, the Lease remained operative; if RGF considered the Lease as having already expired, there would have been no reason to even consider further discussions with ZCDMW regarding the building of a temple on the Vienna Property, much less the negotiations that lead to the drafting and execution of the

MOU. Moreover, as the drafter of the MOU, any ambiguity must be construed against RGF. *Hoffman v. Daimler Trucks N. Am., LLC,* 940 F.Supp.2d 347 (W.D. Va., 2013).

Further demonstrating that RGF intended the MOU to be binding, Dr. Jahanian testified that he expected to see an accomplishment plan from ZCDMW because "they are obligated." (App. 750:11-12)   ZCDMW could only be obligated if the MOU was intended to be binding on the parties.   Dr. Jahanian also confirmed that at no time before the execution of the MOU had RGF canceled or terminated the Lease. (App. 718:22; 719:6-17; 721:17-22; 722:6-7)

Dr. Jahanian also repeatedly made reference in both his affidavit and testimony to documents that were never produced, inclusive of a multitude of emails from other board members of RGF authorizing him to take action on its behalf, inclusive of seeking to terminate the Lease. He also testified to a fully executed lease assignment which was never produced. An after the fact, self-serving affidavit in support of RGF's claims for summary judgment cannot overcome both his own deposition testimony and that of Mr. Shahryary.

In addition, in its supporting Memorandum to its Motion for Summary Judgment, RGF expressly relied upon the allegations contained in paragraph 14 of ZCDMW's Amended Complaint which alleged that the MOU had the effect of superseding the Lease Amendment. It is now bound by those allegations. (App.

998)

While ZCDMW contends the foregoing conflicts, inconsistencies, and lack of disclosure are more than sufficient to carry the day in its favor, at an absolute minimum, it creates an issue of fact which can only be determined at trial. *Logan v. General Fireproofing Company, supra.* As the District Court recognized in Footnote 3 of it Memorandum Opinion, citing to the Virginia Supreme Court's decision in *Traylor v. Holloway*, 142 S.E. 2d 521, 523 (1965), the "intention of the parties is the controlling factor" in interpreting a contract. There is one way, and only one way, on the conflicting record in this case to determine that intent; that is to take evidence at a trial, judge the credibility of the witnesses, weigh the evidence, and resolve the conflicts.

**III. The District Court's finding that ZCDMW breached the subject Lease, as Amended, by failing to timely construct the Darb-E-Mehr on the leased property was in error. The parties entered into a Memorandum of Understanding ("MOU") that superseded the Amendment, which MOU was binding and enforceable. At a minimum, it created an issue of fact which could only be determined at trial**

This issue and the second issued presented are directly connected and overlap. As the District Court's findings were made at the summary judgment stage, this Court reviews those findings *de novo*. *Freeman v. Dal-Tile Corp.,* 750 F.3d 413, 419-420 (4th Cir. 2014). As set forth above, and incorporated herein, ZCDMW submits that the evidence submitted in the District Court demonstrated that the parties intended the MOU to be binding and acted accordingly.

Specifically, in his deposition testimony, Dr. Jahanian conceded that the execution of the Memorandum of Understanding of April 16, 2011 ("MOU") was a recognition that RGF had changed its previous position in which it was adamantly opposed to two temples in the D.C. area.   (App. 738:9-10)   This change of position could occur if, and only if, the Lease remained operative; if RGF considered the Lease as having already expired, there would have been no reason to even consider further discussions with ZCDMW regarding the building of a temple on the Vienna Property, much less the negotiations that lead to the drafting and execution of the MOU.   Moreover, as the drafter of the MOU, any ambiguity must be construed against RGF.   *Hoffman v. Daimler Trucks N. Am., LLC,* 940 F.Supp.2d 347 (W.D. Va., 2013).

Further demonstrating that RGF intended the MOU to be binding, Dr. Jahanian testified that he expected to see an accomplishment plan from ZCDMW because "they are obligated."   (App. 750:11-12)   ZCDMW could only be obligated if the MOU was intended to be binding on the parties.   In addition, in its Memorandum in support of its Motion for Summary Judgment, RGF expressly relied upon the allegations contained in paragraph 14 of ZCDMW's Amended Complaint, which allegations explicitly alleged that the MOU superseded the Lease Amendment.   (App. 998)

Both parties also acted after the MOU was executed consistent with its

requirements. On May 15, 2011, ZCDMW submitted the information required by the MOU. RGF responded, confirming receipt of that information and advising ZCDMW that it should not commence the actual building of the worship center until it had sufficient funds to do so. Thereafter, ZCDMW went about its business. RGF had no further communication with ZCDMW, including any notices and/or assertions that it was not complying with the MOU, over the next two years until Dr. Jahanian commenced his efforts to oust ZCMDW from possession of the Vienna Property. Those efforts are what ultimately lead to this litigation.

The fact that RGF cannot and did not consider the Lease as terminated based upon the Lease Amendment in 2011and that the MOU does, in fact, supersede the latter, is further demonstrated by the fact that RGF has never paid and/or contributed one penny to the costs of maintaining the Vienna Property. To this day, ZCDMW has paid all of the real estate taxes on the property, all of the insurance premiums, and has been solely and exclusively responsible for its care and maintenance.

The District Court's finding that the MOU was not binding also is based upon an incorrect reading of the deposition testimony of the parties. In footnote 3 on page 12 of the Memorandum Opinion, the Court recites that Mr. Shahryary testified at his deposition that he did not believe that the Lease was binding at the time he signed the MOU. In actuality, Mr. Shahryary's testimony was just the opposite; he

˅46˅

testified that it was the Lease Amendment which was no longer operative as of April 16, 2011, not the Lease itself.   (App. 266:17-19)

While ZCDMW contends the foregoing is sufficient to demonstrate that the Lease Amendment was superseded by the MOU, at an absolute minimum, it creates an issue of fact which can only be determined at trial.   *Logan v. General Fireproofing Company, supra.*   As the District Court recognized in Footnote 3 of its Memorandum Opinion, citing to the Virginia Supreme Court's decision in *Traylor v. Holoway*, 142 S.E. 2d 521, 523 (1965), the "intention of the parties is the controlling factor" in interpreting a contract.   Thus, there is one way on the conflicting record in this case to determine that intent; take evidence at a trial, judge the credibility of the witnesses, weigh the evidence, and resolve the conflicts.

**IV.    Even if the Lease Amendment remained in effect, which ZCDMW disputes, RGF either is estopped or is deemed to have waived any requirements related to the commencement and/or completion dates of construction by its own actions in directing ZCDMW to cease and desist its construction activities during the time frame it is undisputed the Lease was in full force and effect.**

Once again, as the District Court's findings were made at the summary judgment stage, this Court reviews those findings *de novo*. *Freeman v. Dal-Tile Corp.,* 750 F.3d 413, 419-420 (4th Cir. 2014).   The record is clear (without conceding the validity of the Lease Amendment), that after the Lease Amendment was executed and deadlines purportedly set for the completion of the worship center, RGF directed ZCDMW to stop construction of the center.   This was precipitated by

RGF's effectively joining forces with Mr. Kamran in the construction of his Darb-e-Mehr in Boyds, Maryland.  Notwithstanding Dr. Jahanian's efforts to play down the imperative nature of the demands, the series of emails, telephone calls, and in person discussions between February 2010 and March 31, 2011 amply demonstrate that RGF had made a determination that there would be only one worship center, the Kamran Temple, and that ZCDMW was to turn over its funds to RGF for use in that endeavor.  Following RGF's directive, ZCDMW did, in fact, cease it efforts.  Its ability to "restart" those efforts were severely and adversely affected by RGF's support of the Kamran temple; that support, in RGF's own words, made fund raising for the Vienna temple "impossible."   RGF also refused to execute the paperwork necessary to obtain bonds and permits which were needed to develop the Vienna Property.

RGF's position remained that there would be only one worship center up until its meeting with Mr. Kamran and his foundation on April 15, 2011.  After learning that Mr. Kamran intended to maintain complete control over the Boyds' temple in perpetuity, the following day when RGF meet with ZCDMW it made a complete about face and decided to renew its joint effort with ZCDMW to build a worship center on the Vienna Property.  As clear and unequivocal evidence of that decision, at the conclusion of the meeting on April 16th, a Memorandum of Understanding was executed which served to confirm that the Lease remained in full force and effect

and that the "deadlines" in the Lease Amendment were no longer operative. In point of fact, Dr. Jahanian testified that as of the point in time the MOU was executed, the Lease had not been terminated, nor had RGF communicated to anyone anything to that effect.

The facts of this case fit squarely into all of the elements of a claim of detrimental reliance: (1) a promise, (2) which the promisor should reasonably expect to cause action by the promisee, (3) which does cause such action, and (4) which should be enforced to prevent injustice to the promisee. *Barnhill v. Veneman*, 524 F.3d 458, 475-76 (4th Cir. 2008), *citing C & K Petrol. Prods., Inc. v. Equibank,* 839 F.2d 188, 192 (3d Cir. 1988) (citing Restatement (Second) of Contracts § 90). RGF, by repeatedly telling ZCDMW to stop any efforts to build a worship center on the Vienna Property and turn over its funds to RGF surely had ample reason to expect that ZCDMW would act in response. ZCDMW did, in fact, act based upon RGF's directive. To allow RGF to now seek to use the deadline of the Lease Amendment as a basis to declare the Lease terminated would be a gross miscarriage of justice.

The District Court's finding that ZCDMW stopped, but only for a short period of time and thus there was no detrimental reliance, is belied by the entirety of the record. Mr. Shahryary's uncontradicted deposition testimony was that resuming after the stop was not something that could be done immediately. He specifically

testified that it was not until at least April 2011 that ZCDMW was able to renew its construction efforts, including its fund raising efforts.   (App. 301:8-22; 303:1-50) Not by coincidence, the April 2011 timeframe is the same time that the parties met, agreed to rejoin forces, and executed the MOU.   It was only at this point that fund raising again became possible, and RGF was ready to cooperate in executing documentation need for the development.

### V.    The District Court's finding that ZCDMW had failed to complete construction of a Darb-e-Mehr was in error.   ZCDMW did, in fact, construct a Darb-E-Mehr on the property.

The District Court's finding that ZCDMW failed to timely complete construction of the Darb-e-Mehr, being a finding at the summary judgment stage, is reviewed *de novo*.   *Freeman v. Dal-Tile Corp.,* 750 F.3d 413, 419-420 (4th Cir. 2014).   The uncontradicted testimony of Mr. Shahryary was that ZCDMW had renovated a building on the Vienna Property which was actively being used as a Zoroastrian worship center and meeting place.   The most recent such meeting was the Sunday before his deposition of January 3, 2014.   (App 270:19-22; 271:1-6) The Lease Amendment relied upon by RGF states only that ZCMD is to complete construction of a Darb-e-Mehr by March 15, 2011.   It contains no requirements regarding the nature of that facility—size wise or otherwise.

The evidence also established that the Lease Amendment was drafted entirely by RGF, as such, it must be construed against it.   Simply put, RGF adduced no

evidence that suggested, much less proved, that the worship center constructed by ZCDMW on the Vienna Property did not satisfy the requirements of the Lease Amendment.   At a minimum, it was a matter to be determined at trial.

### VI.   The District Court's award of attorney's fees to RGF on issues and matters on which it did not prevail was in error.

The District Court interpreted the Lease provision providing for the recovery of attorney's fees to the "prevailing party" as entitling RGF to recover fees for all services performed in the litigation, not just those on which it did, in fact, prevail. The District Court's conclusions of law, including contract construction, are examined *de novo*.   *Roanoke Cement Co., L.L.C. v. Falk Corp.,* 413 F.3d 431, 433 (4th Cir. 2005)

In interpreting a very similar contract provision, the Virginia Supreme Court held that held that a party was entitled to recover fees only to the extent they prevailed on a particular issue, not all of the fees incurred based upon the end result. *Chawla v. BurgerBusters, Inc.,* 255 Va. 616, 621, 499 S.E.2d 829, ___ (1998).   It is to be noted that *Chawla* was one of the cases relied upon by RGF in its Memorandum in support of its claim for attorney's fees.   RGF did not prevail in its two Motions for Judgment on the Pleadings, or in its Motion to Dismiss.   The pleadings related to those three proceedings are included in the Appendix so that this Court is able to discern the considerable amount of time and effort that went into that aspect of the litigation.   ZCDMW also has included the various memoranda related

to the summary judgment motions as they are instructive on the amount of time and effort expended on those matters vs. what was reasonable.

As RGF made no effort in its submission to allocate the fees it expended in the various matters, much less the ones on which it prevailed, the District Court was not in a position to make a ruling on the issue at all, much less a ruling as to the amount of fees and costs recoverable.    In addition, RGF has not met its burden of establishing that its fees were reasonable.    It offered no explanation as to why it filed three (3) separate motions seeking dismissal of ZCDMW's claims without the matter being decided on the merits.    As RGF should well know, such motions should be rarely granted, and only when " "it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief." *Barnette v. Brook Road, Inc.,* 429 F. Supp. 2d 741, 744 (E.D. Va. 2006);    *De Sole v. United States,* 947 F.2d 1169, 1171 (4th Cir. 1991).

Contrast the foregoing to ZCDMW's Motion for Summary Judgment with respect to Count II of RGF's Counterclaim asserting slander of title for recordation of the *lis pendens* filed in the state court action.    In its Motion to Dismiss filed on November 6, 2013, ZCDMW asserted that the slander of title claim could not prevail because the filing of the *lis pendens* was part of a judicial proceeding and thus was privileged, and secondly, that RGF had wholly failed to allege any malice on the part of ZCDMW, a basic element of a claim of slander of title.    While the Court initially

denied the motion for procedural reasons, the same claims were asserted by ZCDMW in its Motion for Summary Judgment.    In its Memorandum Opinion, the Court dismissed the slander of title claim finding that there was "absolutely no evidence in the record" of malice.    In footnote 6, the Court also noted that it is likely that the *lis pendens* is protected by privilege.    In other words, ZCDMW prevailed on that aspect of its Summary Judgment Motion, which was the same basis as its contention in the Motion to Dismiss; ergo, it also prevailed on the latter.

ZCDMW further submits that the attorney's fees claimed by RGF are not reasonable in that significant amounts are claimed for what are ministerial matters; for "interoffice" discussions—not just among the attorneys of Troutman Sanders, but also for attorneys in Kansas City who had no part in the litigation; multiple billings for the always reliable "analysis" of the case; and for the use of multiple attorneys for a task that one attorney could and should have readily accomplished. RGF utilized no less than 4 attorneys in the offices of Troutman Sanders, and for reasons which ZCDMW cannot decipher, two attorneys in Kansas City who billed another $5,570.43.

The reasonableness of the billings is best exemplified by a comparison of the billing statements for RGF's counsel and ZCDMW's counsel.    Both sides did virtually the identical amount of work on the same motions and pleadings, however, RGF's counsel billed a total of $151,401.25 and ZCDMW's counsel billed a total of

$55,835.61; a ratio of almost 3 to 1.

## CONCLUSION

For the foregoing reasons, the Appellant, Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C., prays that this matter be dismissed for lack of subject matter jurisdiction, rendering the District Court's Orders of May 12, 2014 and July 22, 2014, null and void. In the alternative, ZCDMW prays that the District Court's Order of summary judgment on behalf of RGF be reversed, and that it be granted summary judgment finding that the subject Lease remains in full force and effect, or at a minimum, that this matter be remanded to the District Court for a trial on the merits. In the event that this Court determines to up hold the District Court's Orders regarding the substantive issues in the case, ZCDMW prays that this Court reduce the attorney's fees and costs awarded to RGF to a reasonable sum.

Respectfully submitted,

**Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C.**
*By Counsel*

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile
By _____ /s/ Robert L. Vaughn, Jr.
     Robert L. Vaughn, Jr., VSB # 20633
     *Counsel for Zoroastrian Center and Darb-E-Mehr of*
     *Metropolitan Washington, D.C.*

## REQUEST FOR ORAL ARGUMENT

Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C. respectfully requests that this Court hear oral argument in this case. Among other matters, this appeal raises an issue of first impression in this Circuit as to what test to apply in determining the citizenship of a trust. This is an issue which has been raised in cases in this Circuit prior to the present action, and undoubtedly will be raised in more and more cases in the future; it is an issue on which the District Courts, as well as the public, need a definitive answer.

## CERTIFICATE OF COMPLIANCE

In accordance with Rules 32(a)(7)(B) and (C) of the Federal Rules of Appellate Procedure, the undersigned counsel for Appellant certifies that the accompanying Brief is printed in 14 point typeface, with serifs, and, including footnotes, contains no more than 14,000 words. According to the word-processing system used to prepare the Brief, Microsoft Word, it contains 13,844 words, inclusive of the entirety of the Brief.

/s/ Robert L. Vaughn, Jr
Robert L. Vaughn, Jr.

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile

By ____/s/ Robert L. Vaughn, Jr.
      Robert L. Vaughn, Jr., VSB # 20633
      *Counsel for Zoroastrian Center and Darb-E-Mehr of*
      *Metropolitan Washington, D.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2014, the foregoing Brief of Appellant was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Billy B. Ruhling, II (VSB No. 45822)
TROUTMAN SANDERS LLP
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, Virginia 22182
Telephone:    (703) 734-4325
Facsimile:  (703) 734-6529
bill.ruhling@troutmansanders.com

Virginia Bell Flynn (VSB No. 79596)
Massie Payne Cooper (VSB 82510)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone:  (804) 697-1480
Facsimile:    (804) 698-5109
virginia.flynn@troutmansanders.com

I further certify that on October 14, 2014, eight paper copies of the Brief were filed with the Clerk of the Court by hand.

/s/ Robert L. Vaughn, Jr
Robert L. Vaughn, Jr.