**RECORD NO. 14-1841**

In The

# United States Court Of Appeals
## For The Fourth Circuit

**ZOROASTRIAN CENTER AND DARB-E-MEHR OF
METROPOLITAN WASHINGTON, D.C.,**

*Plaintiff – Appellant,*

v.

**RUSTAM GUIV FOUNDATION OF NEW YORK;
MEHRABAN SHAHRVINI, Trustee; DARYOUSH JAHANIAN,
a/k/a Dariush Jahanian, Trustee,**

*Defendants – Appellees,*

and

**SOROOSH SOROOSHIAN; BRUCE NADJMI; KHOSRO MEHRFAR,**

*Appellees,*

and

**ESFANDIAR ANOUSHIRAVANI, Trustee; KEIKHOSRO MOBED, Trustee;
ROSTAM GHAIBI, Trustee; JAMSHID VARZA, Trustee; ROSTAM SARFEH, Trustee,**

*Defendants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA**

_____

**BRIEF OF APPELLEES**

_____

| | |
|---|---|
| Massie P. Cooper | Billy B. Ruhling, II |
| TROUTMAN SANDERS LLP | TROUTMAN SANDERS LLP |
| 1001 Haxall Point | Suite 500 |
| P.O. Box 1122 | 1850 Towers Crescent Pl. |
| Richmond, VA 23218 | Tysons Corner, VA 22182 |
| (804) 697-1392 | (804) 734-4334 |
| | |
| *Counsel for Appellees* | *Counsel for Appellees* |

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information

No. 14-1841      Caption: Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C. v. Rustam Guiv Foundation of New York, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Rustam Guiv Foundation of New York
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☒ NO

    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☒ NO

    If yes, identify entity and nature of interest:

- 1 -

10/28/2013 SCC

5. Is party a trade association? (amici curiae do not complete this question)    ☐ YES  ☒ NO

   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?    ☐ YES  ☒ NO

   If yes, identify any trustee and the members of any creditors' committee:


Signature:  ___/s/ Billy B. Ruhling, II___    Date:  _September 3, 2014_____

Counsel for: Rustam Guiv Foundation of New York_____

10/28/2013 SCC

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on the 3rd day of September, 2014, a true and correct copy of the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Billy B. Ruhling, II                September 3, 2014
(Signature)                                (Date)

10/28/2013 SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information

No. 14-1841_____    Caption: Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C. v. Rustam Guiv Foundation of New York, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Mehraban Shahrvini, Trustee_____
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☒ NO

    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☒ NO

    If yes, identify entity and nature of interest:

- 1 -

10/28/2013 SCC

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES  ☒ NO

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES  ☒ NO

If yes, identify any trustee and the members of any creditors' committee:

Signature:      /s/ Massie Payne Cooper          Date:   September 18, 2014

Counsel for: Mehraban Shahrvini, Trustee

- 2 -

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 18th day of September, 2014, a true and correct copy of the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Massie Payne Cooper                       September 18, 2014
(Signature)                                            (Date)

- 3 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information

No. 14-1841          Caption: Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C. v. Rustam Guiv Foundation of New York, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Soroosh Sorooshian, Trustee
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?      ☐ YES ☒ NO

2.  Does party/amicus have any parent corporations?      ☐ YES ☒ NO

    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐ YES ☒ NO

If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐ YES ☒ NO

    If yes, identify entity and nature of interest:

- 1 -

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES  ☒ NO

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES  ☒ NO

If yes, identify any trustee and the members of any creditors' committee:

Signature:    /s/ Massie Payne Cooper          Date:   September 18, 2014

Counsel for: Soroosh Sorooshian, Trustee

- 2 -

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 18th day of September, 2014, a true and correct copy of the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Massie Payne Cooper                September 18, 2014
(Signature)                              (Date)

10/28/2013 SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information

No. 14-1841_____    Caption: Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C. v. Rustam Guiv Foundation of New York, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Daryoush Jahanian a/k/a Dariush Jahanian, Trustee_____
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☒ NO

2.  Does party/amicus have any parent corporations?    ☐ YES ☒ NO

    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☒ NO

If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☒ NO

    If yes, identify entity and nature of interest:

- 1 -

10/28/2013 SCC

5. Is party a trade association? (amici curiae do not complete this question)     ☐ YES  ☒ NO

   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?     ☐ YES  ☒ NO

   If yes, identify any trustee and the members of any creditors' committee:


Signature:     /s/ Massie Payne Cooper          Date:  September 18, 2014

Counsel for: Daryoush Jahanian a/k/a Dariush Jahanian, Trustee

- 2 -

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on the 18th day of September, 2014, a true and correct copy of the foregoing document was served on all parties or their counsel of record through the CM/ECF system.


/s/ Massie Payne Cooper                         September 18, 2014
(Signature)                                       (Date)

10/28/2013 SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information

No. 14-1841          Caption:  Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C. v. Rustam Guiv Foundation of New York, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Bruce Nadjmi, Trustee
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☒ NO

    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☒ NO

    If yes, identify entity and nature of interest:

- 1 -

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES  ☒ NO

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES  ☒ NO

If yes, identify any trustee and the members of any creditors' committee:

Signature:    /s/ Massie Payne Cooper            Date:   September 18, 2014

Counsel for: Bruce Nadjmi, Trustee

- 2 -

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 18th day of September, 2014, a true and correct copy of the foregoing document was served on all parties or their counsel of record through the CM/ECF system.


/s/ Massie Payne Cooper _____        September 18, 2014 _____
(Signature)                                (Date)

- 3 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information

No. 14-1841           Caption:  Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C. v. Rustam Guiv Foundation of New York, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Khosro Mehrfar, Trustee
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

2. Does party/amicus have any parent corporations?  ☐ YES ☒ NO

   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☒ NO

If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☒ NO

   If yes, identify entity and nature of interest:

- 1 -

5. Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☒ NO

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐ YES ☒ NO

If yes, identify any trustee and the members of any creditors' committee:

Signature:  ___/s/ Massie Payne Cooper___    Date:  _September 18, 2014_____

Counsel for: _Khosro Mehrfar, Trustee____

- 2 -

10/28/2013 SCC

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on the 18th day of September, 2014, a true and correct copy of the foregoing document was served on all parties or their counsel of record through the CM/ECF system.


/s/ Massie Payne Cooper                September 18, 2014
(Signature)                                  (Date)

10/28/2013 SCC

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES .................................................................. iii

STATEMENT OF APPELLATE JURISDICTION ...................................1

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE...................................................................2

    I.    The Parties....................................................................2

    II.    RGF and ZCDMW Executed a Lease Agreement on July 1, 1991 ...........................................................................3

    III.    On January 1, 2009, the Parties Amended the Lease............................3

    IV.    Status of Construction as of November 1, 2009 ...................5

    V.    The Parties Signed a Memorandum of Understanding ........................7

    VI.    Procedural History.................................................................9

SUMMARY OF THE ARGUMENT .......................................................11

ARGUMENT ...........................................................................................14

    I.    The District Court correctly determined that it had jurisdiction under 28 U.S.C. §1332. (Issue Presented I) ........................................14

        1.    Rustam Guiv conclusively established each trustee's domicile through affidavit and other evidence ..........................16

        2.    Neither ZCDMW nor the County of Fairfax is a beneficiary under the Trust Agreement ....................................17

II.   No material issues of fact are in dispute.  The Court properly found that RGF was entitled to judgment as a matter of law because ZCDMW breached the material terms of the lease agreement and that RGF properly terminated ZCDMW's tenancy.  (Issues Presented II, III, and IV).........................................20

    1.   The relationship between the parties is governed by contract....................................................................................21

        a.   The relationship between ZCDMW and Rustam Guiv is governed by the Lease and the Lease Amendment.....................................................................22

        b.   The Memorandum of Understanding is not a binding and enforceable contract....................................24

    2.   ZCDMW Breached its Lease with Rustam Guiv ....................27

        a.   ZCDMW failed to perform its obligations under the Amended Lease ............................................................27

        b.   Even if the MOU were treated as a contract, which Rustam Guiv denies, ZCDMW breached its terms .......30

        c.   Rustam Guiv is not estopped from enforcing the Lease Amendment ........................................................32

III.  The District Court's finding that ZCDMW had failed to complete construction of the Darb-e-Mehr is undisputed by the record.  ZCDMW raises an entirely new argument that was not made on the record before the Eastern District of Virginia.  (Issues Presented V) ...........................................................................35

IV.   The District Court's award of attorney's fees to Rustam Guiv was reasonable and proper.  (Issues Presented VI) ....................................38

CONCLUSION ............................................................................................41

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Allen v. Aetna Cas. Ins. And Sur. Co.*,
    222 Va. 361, 281 S.E.2d 818 (1981) ..............................................22

*Baker v. Preston*,
    21 Va. (Gilmer) 235 (1821) ....................................................32

*Beazer Homes Corp. v. VMIF/Anden Southbridge Venture, LPI*,
    235 F. Supp. 2d 485 (E.D. Va. 2002) ....................................22, 25

*Best Med. Int'l, Inv. v. Receivables Control Corp.*,
    2013 U.S. Dist. LEXIS 42746 (E.D. Va. March 26, 2013)..........................18

*Dominick v. Vassar*,
    367 S.E.2d 487 (Va. 1988) ....................................................32

*Filak v. George*,
    267 Va. 612, 594 S.E.2d 610 (2004) ..........................................27

*Hash v. Johnson*,
    2012 U.S. Dist. LEXIS 25483 (W.D. Va. Feb 28, 2012) ..........................21

*Hyson v. Dodge*,
    96 S.E.2d 792 (Va. 1957) ....................................................32

*McAfee v. Boczar*,
    738 F.3d 81 (4th Cir. 2013) ..................................................38

*Micheleman v. Lincoln National Life Insurance Co.*,
    685 F.3d 887 (9th Cir. 2012) ................................................14

*Muth v. United States*,
    1 F.3d 246 (4th Cir. 1993) ..............................................19, 35

*National Wildfire Fed. v. Hanson*,
    859 F.2d 313 (4th Cir. 1988) ............................................19, 35

*Native American Distrib. v. Seneca-Cayuga Tobacco Co.*,
  546 F.3d 1288 (10th Cir. 2008) .................................................................15

*Premier Signatures Int'l, Inc. v. Field Entm't Prod., Inc.*,
  1999 U.S. App. LEXIS 14028, 1999 WL 427199
  (4th Cir. June 25, 1999) ...................................................................22, 25

*Princess Anne Hills Civic League*,
  413 S.E.2d 599 (Va. 1992) ..........................................................................32

*Progressive Constr. Co. v. Thumm*,
  209 Va. 24, 161 S.E.2d 687 (1968) ...........................................................25

*Scott v. Harris*,
  550 U.S. 372 (2007) .....................................................................................21

*Sheets v. Castle*,
  263 Va. 407, 559 S.E.2d 616 (2002) ...........................................................39

*Sloas v. CSX Transp., Inc.*,
  616 F.3d 380 (4th Cir. 2010) .......................................................................14

*Stewart v. Hall*,
  770 F.2d 1267 (4th Cir. 1985) ...............................................................19, 35

*The Trustees of the Plumbers and Steamfinders Local Union
No. 43 Health and Welfare Fund v. Crawford*,
  2007 U.S. Dist. LEXIS 92934 (E.D. Tenn. Dec. 18, 2007) .........................18

*Thompson v. Potomac Elec. Power Co.*,
  312 F.3d 645 (4th Cir. 2002) .......................................................................21

*United States ex rel.  v. Jadhav, et al.*,
  555 F.3d 337 (4th Cir. 2009) .......................................................................16

*United States v. Wood*,
  1999 U.S. App. LEXIS 5805 (4th Cir. 1998) ...............................................19

*Va. Poverty Law Ctr., Inc. v. Pollard & Bagby, Inc.*,
  1 Va. Cir. 365 (City of Richmond 1983) .....................................................21

*Velasco v. The Government of Indonesia*,
  370 F.3d 392 (4th Cir. 2004) ...........................................................................15

*W.J. Schafer Assoc., Inc. v. Cordant, Inc.*,
  254 Va. 514, 493 S.E.2d 512 (1997) ......................................................22, 26

*Williams v. United States*,
  50 F.3d 299 (4th Cir. 1995) ...........................................................................16

**Statute:**

28 U.S.C. § 1332 ......................................................................................1, 14

**Rules:**

Fed. R. Civ. P. 56(a) ..........................................................................................20

Fed. R. Civ. P. 59(e) ..........................................................................................14

## APPELLEES' BRIEF

COME NOW Appellees, Rustam Guiv Foundation ("RGF"), Daryoush Jahanian, as Trustee, Mehraban Shaharvini, as Trustee, Soroosh Sorooshian, as Trustee, Bruce (Borzoo) Nadjmi, as Trustee and Khosro Mehrfar, as Trustee, (collectively, the "Rustam Guiv"), by counsel, and hereby submit the following in opposition to the Zoroastrian Center and Darb-e-Mehr of Metropolitan Washington's ("ZCDMW") appeal of this matter.

## STATEMENT OF APPELLATE JURISDICTION

This appeal arises from the final Order entered by the District Court for the Eastern District of Virginia entered in this case on July 22, 2014 denying ZCDMW's Motion for Reconsideration and granting in part Rustam Guiv's Motion for Attorney Fees and Costs.[1]

## STATEMENT OF THE ISSUES

I.    The District Court correctly determined that it had jurisdiction under 28 U.S.C. §1332. (Issue Presented I)

II.   No material issues of fact are in dispute.  The Court properly found that RGF was entitled to judgment as a matter of law because ZCDMW breached the

---

[1] ZCDMW's Notice of Appeal to the United States Court of Appeals for the Fourth Circuit states that it is appealing the Order entered on July 22, 2014, not the Court's Order on May 12, 2014 granting, in part, Rustam Guiv's Motion for Summary Judgment.  (JA 1295)

1

material terms of the lease agreement and that RGF properly terminated ZCDMW's tenancy. (Issues Presented II, III, and IV)

III. The District Court's finding that ZCDMW had failed to complete construction of the Darb-e-Mehr is undisputed by the record. ZCDMW raises an entirely new argument that was not made on the record before the Eastern District of Virginia. (Issues Presented V)

IV. The District Court's award of attorney's fees to Rustam Guiv was reasonable and proper. (Issues Presented VI)

## STATEMENT OF THE CASE

### I.    The Parties

Both RGF and ZCDMW are religious, charitable and educational organizations that celebrate Zoroastrainism, an ancient religion of Persia founded by the prophet and reformer Zoroaster in the 6th Century. (JA 834 ¶ 1) RGF is a recognized 501(C)(3) charitable religious foundation based in Kansas City, Kansas. (JA 932-33 ¶ 3) RGF's purpose is to devote and apply monies exclusively for religious purposes by grants to qualified groups or organizations engaged in the practice and advancement of the Zoroastrian Religion. (JA 146) Daryoush Jahanian, Soroosh Sorooshian, Bruce Nadjmi, Mehraban Shahrvini, and Khoso Mehrfar are Trustees of RGF. (JA 933 ¶ 4) ZCDMW is wholly independent from RGF; their

relationship is purely one of tenant and landlord, respectively.  (JA 942-43 ¶¶26-27; JA 252:7-17; JA 285:16-19)

## II.   RGF and ZCDMW Executed a Lease Agreement on July 1, 1991.

RGF owns a parcel of real estate containing approximately 6.8 acres in Fairfax County located at 2347 Hunter Mill Road, Vienna, Virginia 22181 (the "Property"). (JA 834 ¶ 2)  On July 1, 1991, RGF, as Lessor, and ZCDMW, as Lessee, entered into a lease (the "Lease") (JA 848-64), whereby ZCDMW leased the Property from RGF for a term of ninety-nine years, commencing on July 1, 1991, for a total rent of $99 payable at the rate of $1 per year.  (JA 849 ¶ 3.1)  The Lease's express purpose was for ZCDMW to construct a place of worship for Zoroastrians, a facility for the advancement of the Zoroastrian religion, and for construction of a dwelling suitable for residence of a Mobed (preist).  (JA 851 ¶ 6.1)  For approximately seventeen and a half years from July 1, 1991 until January 1, 2008, ZCDMW occupied the Property pursuant to the Lease but never commenced any contemplated construction that would satisfy either of the three stated purposes of the Lease.  (JA 851 ¶ 6.1; JA 277:14-16)

## III.   On January 1, 2009, the Parties Amended the Lease.

Recognizing ZCDMW never engaged in the contemplated construction, on January 1, 2009, RGF and ZCDMW entered into a Lease Amendment ("Lease Amendment").  (JA 836 ¶ 7)  The purpose of the Lease Amendment was to "re-

energize [ZCDMW's] efforts" in constructing a place of worship for Zoroastrians. (JA 261: 14-21)  The Lease Amendment's recitations made clear that as of January 1, 2009, "Lessee ha[d] been unsuccessful in its efforts to build a place of worship and facility for the advancement of the Zoroastrian religion as contemplated by the Lease Amendment." (JA 865-66)   By January 7, 2009, the Lease Amendment was binding upon the parties.  (JA 939 ¶ 11)

The Amendment altered the nature of the relationship between ZCDMW and RGF, and imposed new obligations upon both, including the requirement that construction of the Center must begin "no later than November 1, 2009" and that it be completed by "March 15, 2011."  (JA 836 ¶ 7; JA 865 ¶ 3) ("Lessee agrees to *promptly* begin preparation for and construction of a Darb-e-Mehr Religions Center for worship and practice of Zoroastrian religion, customs, and traditions (the "Center") on the Premises.  Lessee agrees to undertake such construction no later than November 1, 2009 (the "Start Date") and to complete construction of the Center no later than March 15, 2011 (the "Completion Date").") (Emphasis added.)

The Amendment further provided that the Start Date and Completion Date could be extended only if such extension was in writing and signed by both RGF and ZCDMW.  (JA 865-66 ¶ 4) ("If Lessee has not commenced *substantial construction* activities satisfactory to Lessor by the Start Date, then Lessor may terminate the Lease; PROVIDED HOWEVER, that Lessor may, in its discretion, if

4

it determines that satisfactory progress is being made in efforts to plan, fund and prepare for construction, extend the Start Date by up to an additional two years. Any such extension must be in writing, signed by the Lessor and Lessee, and must be executed no later than the initial Start Date above specified.")

Under no circumstances, however, could ZCDMW's construction of the Center extend past March 15, 2013. (JA 866 ¶ 6) ("Anything to the contrary notwithstanding, and regardless of any and all extensions of the Start Date and/or Completion Date, the Center must be completed no later than March 15, 2013 (the "Final Completion Date").") If Rustam Guiv determined, in its discretion, that substantial construction activity had not been undertaken by the Start Date or by the extended Completion Date (if applicable), Rustam Guiv could terminate the lease by written notice to ZCDMW. (JA 865-55 ¶ 4) If ZCDMW had not achieved completion of the Center by March 15, 2013, the Final Completion Date, then RGF could terminate the lease by written notice to ZCDMW. (JA 866 ¶ 5)

IV.    **Status of Construction as of November 1, 2009**

As of November 1, 2009, ZCDMW had not begun construction of the religious center. (JA 278:22 – 279:5) ZCDMW did not seek an extension of the Start Date prior to November 1, 2009. (JA 281:5-9) Rustam Guiv did not grant any extension of the Start Date to ZCDMW by November 1, 2009 (or ever). (JA 940 ¶ 15)

5

On March 5, 2010, ZCDMW held a meeting where it called Daryoush Jahanian, M.D. ("Dr. Jahanian") to discuss the Center. (JA 945-46) During this call, Dr. Jahanian expressed frustration and doubt that ZCDMW could fulfill the Lease's purpose. *Id.* He, therefore, suggested that ZCDMW should stop writing contracts and spending money on the project. *Id.* ZCDMW disagreed with the recommendation to stop the project. It was adamant that it would continue working on the project notwithstanding Dr. Jahanian's comment. *Id.* ("In short [Dr. Jahanian] was told that Vandsar[2] will continue with its mission for all the reasons that the Guiv foundation asks us to build in the first place."). After the call, ZCDMW reiterated that it would contact the consultants to continue working and confirmed its intention to retain other consultants. *Id.* ("I was asked to tell Bahram to communicate with all consultants and inform them of the situation see [sic] where they stand and what does it take [sic] to continue. Soheli was discussed for his Engineering capabilities and his offer, Hormoz and Rostam were in his presentation and like to retain his services.")

On March 7, 2010, Dr. Jahanian restated the content of the call from March 5, 2010, in an email to ZCDMW. (JA 869) On April 28, 2010, ZCDMW sent a letter to Rustam Guiv acknowledging Dr. Jahanian's recommendations and alerting Rustam Guiv that after a brief period of inactivity, ZCDMW had decided to continue

---

[2] Vandsar refers to the core group of the ZCDMW.

working on the Center despite Rustam Guiv's suggestion. (JA 947-48) ("Vandsar considered your recommendation, temporarily stopped the progress of work as suggested by you, and discussed the matter with the Zoroastrian Community. It was determined, that in the best interest of the Zoroastrian community of Metropolitan Washington, D.C. area and Vandsar, as a representative of and on behalf of the Rustam Guiv Foundation, to stay on course with the mission before us by continuing to progress and move forward.") This letter confirmed ZCDMW's determination "to continue the construction process," regardless of any suggestion otherwise from Rustam Guiv. (JA 299:9-22)

As of March 15, 2011, ZCDMW still had not begun construction of a new building as contemplated by the Lease. (JA 279:12-15; JA 941 ¶ 18) ZCDMW did not seek, and Rustam Guiv did not grant, an extension of the Completion Date to ZCDMW by March 15, 2011. (JA 941 ¶ 19)

## V.    The Parties Signed a Memorandum of Understanding

On April 16, 2011, Rustam Guiv and ZCDMW entered into a handwritten Memorandum of Understanding ("MOU"), which set forth the planning and budgeting requirements to be undertaken by ZCDMW. (JA 872) The MOU's terms were straight forward and simple: ZCDMW "will provide to the trust an accounting book to list the names & amounts of all donations and all expenses. [ZCDMW] will also continue to provide quarterly financial reports & account summary of all

donations and expenses. [ZCDMW] will provide an accomplishment plan with milestones & deadlines, mutually agreed by the two parties. The deadlines & milestones should be reasonable and achievable. The plan should include the organizational structure." (JA 872 ¶¶ 2-3)

The plain language of the MOU obligated ZCDMW to perform the tasks identified in paragraphs 2, 3, and 5 of the MOU by May 15, 2011. (JA 872 ¶ 6) ZCDMW agreed that its performance of these tasks would be done in a manner satisfactory to RGF. *Id.* ("Items 2, 3 and 5 above will be provided on or before 5/5/2011 and must be approved by the Trust.") The MOU does not mention or acknowledge the Lease or Lease Amendment. (JA 387:15-22; JA 872) It does not provide for an extension of the Start Date or the Completion Date. (JA 872)

On May 15, 2011, ZCDMW emailed Dr. Jahanian to provide an update on the efforts to build the Center. (JA 873-75) ZCDMW's May 15, 2011 email did not contain: (1) an accounting book to list the names and accounts of all donations and expenses; (2) an account summary of all donations and expenses; or (3) an accomplishment plan with milestones and deadlines. *Id.* ZCDMW has since failed to provide quarterly financial reports, account summaries, an accomplishment plan, or a fallback contingency plan. (JA 333:16-22; JA 340:3-15; JA 950-52 ¶¶4-11)

Since May 19, 2011, ZCDMW has raised a total of $5,000 additional funds towards the construction of the Center. (JA 344:16-22) ZCDMW did not complete construction on the Center by March 15, 2013. (JA 941 ¶ 21) The site remains as it was on July 1, 1999.

On April 20, 2013, Rustam Guiv provided notice to ZCDMW that the Lease was terminated based upon ZCDMW's failure to complete construction of the temple. (JA 876-77) ("This letter is written notice terminating the Lease effectively immediately for Lessee's default, including without limitation its failure to complete the Center by the Final Completion Date.")

## VI.   Procedural History

ZCDMW filed its initial Complaint in this action on May 14, 2013, in the Fairfax County Circuit Court seeking declaratory judgment, injunctive relief, and asserting breach of contract. (JA 26-57) On August 13, 2013, Rustam Guiv removed this matter to the Eastern District of Virginia. (JA 20-25) Rustam Guiv filed an Answer to the Complaint and a Counterclaim asserting breach of contract, slander of title, and quiet title. (JA 71-84)

On January 14, 2014, the Court granted ZCDMW's Motion to Amend/Correct the Complaint. (JA 833) On January 15, 2014, ZCDMW filed an Amended Complaint seeking declaratory judgment, injunctive relief, and asserting a breach of a different contract, namely, the MOU. (JA 834-77)

9

On February 28, 2014, both parties filed cross Motions for Summary Judgment. (JA 908-09)  On March 14, 2014, Rustam Guiv filed an Answer to ZCDMW's Amended Complaint. (JA 1018-26)  That same day, both parties filed their Oppositions to the respective Motions for Summary Judgment. (JA 1027-1099; JA 1100-1122)  On March 25, 2014, the parties each filed Replies in Support of their Motions for Summary Judgment. (JA 1123-34; JA 1135-58)  The Court heard oral argument on these motions on April 25, 2014.  On May 12, 2014, the Court granted Rustam Guiv's Motion for Summary Judgment in part and denied ZCDMW's Motion for Summary Judgment. (JA 1159-75; JA 1176)  The effect of this Order was to dismiss ZCDMW's Amended Complaint in its entirety with prejudice; dismiss Count II of Rustam Guiv's Counterclaim with prejudice; enter judgment in favor of Rustam Guiv on Counts I and III of its Counterclaim; and strike the Memorandum of Lis Pendens filed by ZCDMW from the land records of Fairfax County, Virginia.  *Id.*  The Order provided that Rustam Guiv was permitted separately to seek costs, expenses, and reasonable attorney's fees as provided for in the Lease. (JA 1176)

On June 9, 2014, Rustam Guiv filed its Motion for Attorney Fees. (JA 1177-79)  On the same day, ZCDMW filed a Motion for Reconsideration of the Court's Memorandum Opinion and Order on the Motion for Summary Judgment. (JA 1232-33)  On June 18, 2014, Rustam Guiv opposed ZCDMW's Motion for

10

Reconsideration. (JA 1234-43) The next day ZCDMW filed its Opposition to Rustam Guiv's Motion for Attorney Fees. (JA 1244-55) Both parties filed Reply briefs in support of their respective motions. On July 22, 2014, the Court issued an Order denying ZCDMW's Motion for Reconsideration and granting in part Rustam Guiv's Motion for Attorney Fees and Costs. (JA 1289-94)

On August 19, 2014, ZCDMW filed its Notice of Appeal in this matter. (JA 1295-97)

## SUMMARY OF THE ARGUMENT

This action seeks redress for ZCDMW's breach of a 99-year below market rate lease with Rustam Guiv and for ZCDMW's improper conduct in the aftermath of that breach. After ZCDMW failed to comply with the terms of the lease at issue, Rustam Guiv lawfully terminated the lease. ZCDMW then filed suit, contending that Rustam Guiv breached the lease, and as a result, Rustam Guiv should be enjoined from terminating the lease.

In reality, ZCDMDW knowingly breached the lease by failing to complete construction of a religious center – as required by the contract between ZCDMW and Rustam Guiv. When Rustam Guiv terminated the lease, rather than peaceably surrendering the property as they were contractually obligated to do, ZCDMW filed the instant lawsuit and a *lis pendens* in an attempt to coerce Rustam Guiv into extending the lease agreement. ZCDMW's strategy, however, cannot overcome the

11

clear and unambiguous language of the lease contract at issue, the governing law, and the undisputed facts, all of which demonstrate that ZCDMW was at all times since at least November 1, 2009, in breach of the lease.

As the trial court found, the Lease and Lease Amendment control the relationship between the parties.  (JA 1159-60) ("Two documents control the controversy's contours.  The first is the Original Lease…the second principal document involved in the controversy: the amendment to the Original Lease.").  The main purpose of the Lease was to construct a religious center on the Property.  Frustrated by lack of progress, Rustam Guiv extended the terms of the lease in exchange for imposition of a strict set of construction deadlines in the Lease Amendment.

As the trial court recognized, "the Lease Amendment was entered into in order to expedite the sole purpose of the contract: construction of a Zoroastrian place of worship on the Property."  (JA 1167).  The Lease Amendment imposed three "distinct and specific deadlines on ZCDMW: the 2009 Start Date, the 2011 Completion Date; and the 2013 Final Completion Date."  *Id.*  ZCDMW breached each deadline and requirement outlined in the terms of the Lease and Lease Amendment.  *Id.*  Each of these missed deadlines constitutes a material breach of the lease agreement.  *Id.*  In accordance with these terms, on April 20, 2013, Rustam Guiv sent ZCDMW a formal notice of termination.  (JA 1169).  As the trial court

definitively found after a thorough review of the record, Rustam Guiv properly terminated ZCDMW's tenancy.  (JA 1173)

ZCDMW filed suit in Virginia state court seeking to enforce the terms of the lease agreement.  Rustam Guiv removed the case to the Eastern District of Virginia based on complete diversity of the parties.  Rustam Guiv entered evidence sufficient to establish that RGF is a religious organization based in Kansas and that none of the five current trustees are domiciled in Virginia.  After extensive briefing the trial court heard oral argument and found removal to be proper.

After ruling in favor of Rustam Guiv at the summary judgment phase, the trial court invited Rustam Guiv to submit additional pleadings if it sought attorney's fees and costs in accordance with the clear language of Article XIII of the lease agreement.  (JA 1176) After again reviewing extensive fee records and legal argument, the trial court granted Rustam Guiv a portion of its attorney fees.  (JA 1289-94)

The trial court's rulings at the removal, summary judgment, and post-judgment stages were amply supported by evidence in the record, including lengthy pleadings and exhibits from both parties.  The court reached a well-reasoned decision in each instance.  For the reasons set forth below, the decisions of the District Court must be affirmed.

# ARGUMENT

ZCDMW argues that each of the issues it presents in its appeal should be reviewed *de novo*. In doing so, ZCDMW conflates several issues, which will be addressed below. Ordinarily, a motion for reconsideration is reviewed under an abuse of discretion standard. *See Sloas v. CSX Transp., Inc.*, 616 F.3d 380, 388 (4th Cir. 2010) (providing abuse of discretion standard of review of Fed. R. Civ. P. 59(e) denial of motion to reconsider); *see also Micheleman v. Lincoln National Life Insurance Co.*, 685 F.3d 887, 892 (9th Cir. 2012) ("The district court's refusal to reconsider or vacate summary judgment is also reviewed for an abuse of discretion.") As previously noted in the Statement of Appellate Jurisdiction, ZCDMW noticed its appeal only of the Motion for Reconsideration. Thusly, the Court should review the issues raised by ZCDMW for abuse of discretion. Even if the Court should undertake a *de novo* review, however, the Court will find that the District Court's rulings should be affirmed.

## I. The District Court correctly determined that it had jurisdiction under 28 U.S.C. §1332. (Issue Presented I)

As a preliminary matter, it is not clear that this issue is properly before the court insofar as ZCDMW's Notice of Appeal did not challenge the Court's Order of October 22, 2013 denying ZCDMW's Motion to Remand. (JA 1295-97) While jurisdiction is classically an issue that may be raised at any stage in the proceedings, this case's procedural posture is important. Here, the trial court entered an Order

expressly addressing jurisdiction. ZCDMW, however, chose not to note an appeal of that decision. ZCDMW is limited in what it is permitted to appeal by the contents of its Notice of Appeal, and an appellant should not be permitted to raise an issue about which it does not provide notice simply because such issue could otherwise be raised for the first time on appeal.

Should the Court overlook ZCDMW's failure to notice the Order on remand, it is not an issue reviewed *de novo*. This Court has held that it reviews a district court's factual findings regarding subject matter jurisdiction under the clearly erroneous standard. *Velasco v. The Government of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) ("We review the district court's factual findings with respect to jurisdiction for clear error and the legal conclusions that flows therefrom *de novo*."); *Native American Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1293 (10th Cir. 2008) ("Where, as here, subject-matter jurisdiction turns on a question of fact, we review the district court's factual findings for clear error and review its legal conclusions *de novo*."). ZCDMW here challenges the existence of diversity through the factual findings made by the District Court, which this Court should review for clear error. Nonetheless, the District Court's ruling on these issues survives even a *de novo* review. This Court should affirm the District Court's holding that diversity existed between the parties.

15

1.    **Rustam Guiv conclusively established each trustee's domicile through affidavit and other evidence.**

ZCDMW challenges the sufficiency of the evidence surrounding the court's decision on diversity.  Rustam Guiv acknowledged its burden to establish diversity. However, ZCDMW fails to grasp that Rustam Guiv carried that burden by a preponderance of the evidence.  A litigant is not held to some impossibly high standard as ZCDMW essentially argues.  *United States ex rel.  v. Jadhav, et al.*, 555 F.3d 337, 347 (4th Cir. 2009) ("When, as here, a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence.")

When reviewing the facts supporting diversity, courts may look beyond the pleadings to evidence such as affidavits.  *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (district "courts may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning jurisdiction."); *U.S.A. et al. v. Jadhav, et al.*, 555 F.3d 337, 347 (4th Cir. 2009) (the district court may go beyond the pleadings to resolve jurisdictional facts in dispute by using evidence "such as affidavits").  As the District Court correctly found, Rustam Guiv established the identities of RGF's current trustees as well as their individual domiciles by a preponderance of the evidence.  (JA 120-44; JA 177-88)  ZCDMW both at the trial court, and in its appeal, failed to present any evidence contrary to that submitted by Rustam Guiv.  Rather, it merely challenges the sufficiency of the record evidence.

16

Rustam Guiv established, through use of an affidavit, the identities of the five current trustees: Daryoush Jahanian, Soroosh Sorooshian, Bruce Nadjmi, Mehraban Shahrvini, and Khosro Mehrfar. (JA 120-24) Rustam Guiv also documented how each trustee was appointed. (JA 133-44). Rustam Guiv submitted residency documents for each trustee showing each individuals domicile. (JA 177-82) ZCDMW challenges that these documents fail to conclusively establish domiciles. However, that is not the standard to which Rustam Guiv is held. The evidence easily satisfies the preponderance standard with respect to the domicile of each trustee. To satisfy the unreasonably high burden that ZCDMW seeks to require, each trustee apparently would have been required to appear personally to testify in front of the court regarding their domiciles. This simply is not required to satisfy the evidentiary standard for removal.

## 2. Neither ZCDMW nor the County of Fairfax is a beneficiary under the Trust Agreement.

RGF's Trust Agreement clearly indicates that ZCDMW and the County of Fairfax are not beneficiaries under the trust. It provides that "[t]he purposes of this Trust are to devote and apply the property of this instrument (vested in the Trutsees) and the income to be derived therefrom exclusively for religious purposes by grants to qualified groups or organizations engaged in the practice and advancement of the Zoroastrian Religion, provided, however, that no part of this trust fund shall inure to the benefit of *any* private shareholder or individual ..." (JA 146) In construing trust

agreements, courts look to "general rules of contract interpretation." *The Trustees of the Plumbers and Steamfitters Local Union No. 43 Health and Welfare Fund v. Crawford*, 2007 U.S. Dist. LEXIS 92934, at *8 (E.D. Tenn. Dec. 18, 2007). It is black letter law in the Commonwealth that where a contract's terms are plain and unambiguous, they must be given their plain and ordinary meaning. *Best Med. Int'l, Inv. v. Receivables Control Corp.,* 2013 U.S. Dist. LEXIS 42746, at *8-9 (E.D. Va. March 26, 2013) (holding that contract provisions "are construed as written, and the Court does not add terms that were not included by the parties.") (citations omitted).

The plain language of the Trust Agreement's exclusion clause prohibits ZCDMW, or any of its members, from claiming to be a beneficiary under the Trust Agreement. (JA 146 ¶ 2) Even if the Court were to construe the Trust Agreement as creating a class of beneficiaries from those qualified groups receiving "grants" from RGF, ZCDMW still cannot claim to be a beneficiary. ZCDMW and RGF are lessor and lessee, respectively. There is no contention that the Lease provided ZCDMW any sort of grant from the Trust, nor is there evidence to support such a conclusion. There is simply no objective fact that this Court could look to that establishes ZCDMW is anything other than a lessee whose sole interest in the property arises by virtue of a written contract existing separate and apart from the Trust Agreement. When a trust enters into a written agreement with a party, the mere act of engaging in a contract does not make the contracting party a beneficiary

under the trust. As such, ZCDMW cannot be said to be a beneficiary under the Trust Agreement that destroys diversity in this matter. And there ZCDMW points to no other fact that either destroys diversity or otherwise strips the trial court of jurisdiction.

Similarly, the County of Fairfax cannot be a beneficiary under the Trust Agreement. First, this argument does not appear in any papers comprising the record in this matter, as such it should be considered an argument raised for the first time on appeal, which renders it improper.[3] This Court has consistently ruled that it will not consider issues raised for the first time on appeal. *See Muth v. U.S.*, 1 F.3d 246, 250 (4th Cir. 1993) ("As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered.") (citing *National Wildfire Fed. v. Hanson*, 859 F.2d 313, 318 (4th Cir. 1988); *Stewart v. Hall*, 770 F.2d 1267, 1271 (4th Cir. 1985)).

Second, the County of Fairfax cannot qualify as a beneficiary inasmuch as it does nothing to engage in the practice or advancement of the Zoroastrian religion. Third, holding that an easement granted on land makes the local county a beneficiary

---

[3] In candor, ZCDMW may have asserted this argument in oral argument. ZCDMW failed, however, to provide the Court with transcripts of any hearings in this matter. This Court has repeatedly held that the appellant is responsible for providing an adequate record for review. *United States v. Wood*, 1999 U.S. App. LEXIS 5805, at *22 (4th Cir. 1998) ("It is the responsibility of the appellant to ensure that the record on appeal is complete.") To the extent that ZCDMW failed to do so, this Court should not consider this argument.

would have catastrophic unintended results. It necessarily would lead to the conclusion that a party could never remove a land dispute to federal court because the presence of the land and inevitable public utility or access easements on the property necessarily would destroy diversity. Such a conclusion is illogical and RGF has not found any evidence that any court has ever held that to be the state of the law. Finally, ZCDMW's argument proves too much. The County of Fairfax was not named as a party in this matter. ZCDMW, as the master of its own complaint, should not be permitted to claim at this point that diversity is destroyed by the existence of an entity that ZCDMW itself did not make a party to the Complaint.

For these reasons, the Court should affirm the District Court's findings that the parties to this action are diverse and, therefore, that removal of this action to federal court was proper.

## II. No material issues of fact are in dispute. The Court properly found that RGF was entitled to judgment as a matter of law because ZCDMW breached the material terms of the lease agreement and that RGF properly terminated ZCDMW's tenancy. (Issues Presented II, III, and IV)

Summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling

20

on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Hence, to withstand summary judgment, the non-moving party must produce

competent evidence sufficient to reveal a genuine issue of material fact. *Thompson*

*v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Neither

conclusory allegations nor the production of a mere scintilla of evidence in support

of a non-moving party's case suffices to forestall summary judgment." *Hash v.*

*Johnson*, 2012 U.S. Dist. LEXIS 25483, at *24-25 (W.D. Va. Feb 28, 2012). Under

these standards, the District Court properly granted summary judgment in favor of

Rustam Guiv holding that "ZCDMW breached the material terms of its lease

agreement with RGF and that RGF properly terminated ZCDMW's tenancy in

April, 2013." (JA 1175)

### 1.    <u>The relationship between the parties is governed by contract.</u>

The relationship between ZCDMW and RGF is one of landlord-tenant. As

such, it is governed by the terms of the contractual agreement between the parties.

After all, "[t]he relationship between landlord and tenant is one based purely upon a

lease or agreement and is private in nature." *Va. Poverty Law Ctr., Inc. v. Pollard*

*& Bagby, Inc.*, 1 Va. Cir. 365, 369 (City of Richmond 1983). As this Court has

unambiguously explained, a writing must possess certain attributes to constitute an

enforceable contract.

It is well settled under Virginia law that agreements to negotiate at some point in the future are unenforceable. *See Premier Signatures Int'l, Inc. v. Field Entm't Prod., Inc.,* 1999 U.S. App. LEXIS 14028, 1999 WL 427199 at *3 n.4 (4th Cir. June 25, 1999); *W.J. Schafer Assoc., Inc. v. Cordant, Inc.* 254 Va. 514, 519-20, 493 S.E.2d 512 (1997); *Allen v. Aetna Cas. Ins. And Sur. Co.,* 222 Va. 361, 363-64, 281 S.E.2d 818 (1981).  To form a binding contractual obligation, there must be "mutual assent of the contracting parties to terms reasonably certain under the circumstances." *See Schafer,* 254 Va. at 519 (citing *Allen,* 222 Va. at 364).  Mere "agreements to agree in the future" are "too vague and too indefinite to be enforced." *Id.*

*Beazer Homes Corp. v. VMIF/Anden Southbridge Venture, LPI,* 235 F. Supp. 2d 485, 490 (E.D. Va. 2002) (Ellis, J.).  In a landlord-tenant relationship, the parties are bound only by the unambiguous elements of the operative lease or contract governing their relationship.

### a.     The relationship between ZCDMW and Rustam Guiv is governed by the Lease and the Lease Amendment.

In 1991, Rustam Guiv purchased the Property in order to facilitate construction of the Center.  (JA 834-35 ¶ 2; JA 844-45)  Shortly thereafter, ZCDMW contracted with Rustam Guiv to lease the property for $1 a year, far below market rent, for 99 years while it built the Center.  (JA 848-64)  Over the course of the ensuing almost eighteen years, ZCDMW failed to engage in any substantial construction activity.  (JA 865-66; JA 277:14-16)  By late 2008, Rustam Guiv realized that if ZCDMW was left to its own schedule, the primary purpose behind acquisition of the Property and leasing it to ZCDMW – construction of a Zoroastrian religious center in the metropolitan Washington, D.C.

area – would never be fulfilled. As a result, Rustam Guiv negotiated with ZCDMW to amend the Lease. In exchange for the imposition of a strict construction timeline being imposed on ZCDMW, Rustam Guiv restarted the 99 year term of the lease, thereby effectively extending the Lease by an additional eighteen years. (JA 865-66) The Lease and Lease Amendment are the only two binding agreements that ZCDMW and RGF have entered into regarding the Property. (JA 848-64; JA 865-66)

As the District Court correctly held after extensive review, these two documents govern their relationship. (JA 1160) ("Two documents control the controversy's contours. The first is the Original Lease…For a variety of reasons not material to the Court's inquiry, and much to the frustration of RGF, ZCDMW did not begin actual construction on the Property for several years following execution of the Original Lease. This inaction led to the creation of the second principal document involved in the controversy: an amendment to the Original Lease.") The Lease and Lease Amendment are clear and unambiguous in establishing the framework that governs the relationship between ZCDMW and Rustam Guiv. And ZCDMW provides no record evidence to establish any material issues of fact are in dispute that would lead to a contrary conclusion.

### b.    The Memorandum of Understanding is not a binding and enforceable contract.

While ZCDMW attempts to muddy the waters regarding the MOU, the material facts and legal analysis establishing that the MOU is unenforceable are undisputed.[4]   By the spring of 2011, ZCDMW's efforts had again stagnated; meanwhile a third-party was actively building a separate Zoroastrian facility in nearby Boyds, Maryland.  (JA 279:12-15; JA 941 ¶ 18)  With this backdrop, on April 16, 2011, the parties held a meeting regarding ZCDMW's inability to complete the project.  (JA 324:10-14; JA 328:4-10)  At the conclusion of this meeting, the parties executed a third document – the MOU– as a prelude to potentially entering into a further amendment to the Lease.  (JA 872; JA 1072-73 ¶ 11; JA 1082 ¶ 9)

The MOU contains no introductory language or other information to provide any context to the reader.  *Id.*  It does not refer either explicitly or even implicitly to the Lease, the Property, or the nature of the relationship between Rustam Guiv and ZCDMW.  *Id.* Rather, it recites certain obligations that ZCDMW agreed to undertake in order to prove to Rustam Guiv that it was able to account for the monies it had

---

[4] Indeed, this is the exact finding of the District Court.  (JA 1163)  "Although what occurred between 2010 and 2011 is far from certain, the legally material facts are undisputed."  ZCDMW attempts to argue that conflicting testimony and credibility of witnesses warrants a trial in this matter.  However, as the trial court found, the contracts at issue govern the relationship between the parties making testimony and credibility immaterial issues.

raised over the nearly two decades in which it had occupied the Property and that it had a realistic plan for completing the construction project. *Id.*

That the MOU is not a binding in contract is clear from its face. To be enforceable a contract must identify its subject matter and set forth the essential agreements and commitments between the parties. *Progressive Constr. Co. v. Thumm,* 209 Va. 24, 161 S.E.2d 687,691 (1968) (holding for a contract to be binding it "must identify the subject matter and spell out the essential commitments and agreements with respect thereto"); *Beazer Homes,* 235 F. Supp. 2d 485, 490 (E.D.Va. 2002). A writing is not enforceable against the parties unless the material terms can be discerned from the four corners of the document. *Premier Signatures Int'l v. Feld Entm't Prod., Inc.,* 1999 U.S. App. LEXIS 14028 (4th Cir. June 25, 1999).

In this case, the MOU fails to satisfy either prong of the *Progressive Constr. Co.* definition. It never identifies the subject matter of the agreement. (JA 872) Indeed, as ZCDMW acknowledges, the MOU does not even refer to the Lease. (JA 872; JA 387:15-22) And it does nothing to clarify the sequence of events, nor does it modify any of the relevant terms of the Amended Lease. (JA 872) There is no mutuality of assent or agreement contained within the document. *Id.* It does not alter any of the terms of the relationship between ZCDMW and Rustam Guiv. *Id.* It did not derogate or otherwise alter the Completion Date or the Final Completion

Date as set forth in the Lease Amendment. *Id.* It did not extend the Lease term. *Id.* It did not reinstate the pre-amendment terms of the Lease. *Id.* Indeed, the only date that appears on its face is that of May 15, 2011, on which ZCDMW was obligated to provide certain information to Rustam Guiv. Ultimately, the MOU did not alter the parties' respective standing vis-à-vis one another in the slightest way. *Id.*

At best, this document represents an agreement to reach "an accomplishment plan with milestones & deadlines, mutually agreed by the two parties" at some point in the future. *Id.* In other words, it expresses a willingness, if ZCDMW could establish it has effectively organized and developed a workable approach to the project, at some point after May 15, 2011, to negotiate a new agreement governing their relationship. Certainly that was the understanding RGF's Trustees held of the MOU. (JA 1072-73 ¶ 11; JA 1082 ¶ 9) Of course, it is well settled in the Commonwealth of Virginia that such agreements to agree are not enforceable. *W.J. Schafer Associates, Inc. v. Cordant, Inc.*, 254 Va. 514, 493 S.E.2d 512 (1997). Thus, the MOU never became a binding contract governing the landlord-tenant relationship existing between Rustam Guiv and ZCDMW.[5]

---

[5] Of course, as explained *infra*, whether or not the MOU constitutes a binding contract is of no moment insofar as ZCDMW failed to perform any of the acts to which it agreed therein.

26

## 2. __ZCDMW Breached its Lease with Rustam Guiv.__

ZCDMW's lack of action and failure to complete construction of the Center, among other things, constitutes a clear breach of contract (*e.g.*, breach of the Lease as amended by the Lease Amendment). In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the ZCDMW caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).

### a. ZCDMW failed to perform its obligations under the Amended Lease.

There can be no doubt that the parties entered into a binding contract whose terms were set forth in the Lease as modified by the subsequent Lease Amendment. The purpose of the Lease is explicitly identified therein. (JA 851) ("Lessee may use the premises for only the following purposes: (i) For construction of a place of worship for all Zoroastrians of the world and as a facility for practice of Zoroastrian religion, customs, and traditions; (ii) For construction of a facility for the advancement of the Zoroastrian religion … (iii) For construction of a dwelling suitable for residence of a Mobed (priest).").) In 2009, the parties amended the Lease because they both recognized that over the course of the first seventeen and one half years that the Lease had been in force, ZCDMW had failed to fulfill the central purpose of the Lease because it failed to begin substantial construction of the Center.

27

(JA 865-66)  Thus, as ZCDMW explained during its deposition, the parties entered the Lease Amendment as a means to "re-energize [ZCDMW's] efforts."  (JA 261:14-21)  In order to facilitate this reenergized effort, RGF agreed to restart the Lease term of 99 years.  (JA 865-66)  Of course, RGF was only willing to accept that change in their relationship if ZCDMW also gave a concession in the process.  To that end, RGF required ZCDMW to agree to a strict timeline for completion of the Center – something it had not negotiated for in the original Lease.  *Id.*  And the consequences of a failure to meet the construction timeline were expressly set forth in the Amendment.  Unfortunately, ZCDMW failed to meet a single deadline set out in the Lease Amendment.  (JA 378:22-279:5; JA 279:12-15; JA 941 ¶¶ 18, 21)

The language of the Lease Amendment makes clear that "[i]f [the ZCDMW] has not commenced substantial construction activities *satisfactory to [the Defendants]* by [November 1, 2009], then [Defendants] may terminate the Lease…."  *(*Am. Compl., Ex. D at ¶  4.) (emphasis added).  Indeed, ZCDMW admits that as of November 1, 2009, it had not begun construction of a new Darb-e-Mehr religious center.  (JA 278:22-279:5) That failure did not come as a complete surprise in November, 2009, because the parties were well aware that ZCDMW did not even have a building plan approved at that time.  (JA 278:22-279:5; 282:16-18)  Simply put, ZCDMW was in breach of the contract as of at least November 1, 2009 because of its failure to commence substantial construction activities. (JA 865-66 ¶¶ 3-4)

And according to the unambiguous language of the Lease Amendment, to which ZCDMW agreed, this failure constituted a lawful basis for Rustam Guiv to terminate the contract. (JA 865-66 ¶ 4) Admittedly, RGF did not immediately invoke its right to terminate the contract on November 1, 2009. But its failure to do does not constitute a waiver of the right to terminate the contract at a later time as a result of ZCDMW's breach. (JA 858-59 ¶ 16.1)

Even if ZCDMW had not breached the contract in November 2009 when it failed to begin substantial construction of the Center, there can be no question that it breached other terms of the Lease. The Lease Amendment required construction of the center be completed "no later than March 15, 2011 (the "Completion Date")." (JA 865 ¶ 3) ZCDMW admits that as of March 15, 2011, it had not completed construction of a new building as required by the Lease Amendment. (JA 279:12-15; 941 ¶18) Further, ZCDMW admits that RGF did not grant an extension of the Completion Date as would be required to extend this deadline. (JA 941 ¶ 19) The Lease Amendment also independently provides that "[a]nything to the contrary notwithstanding, regardless of any and all extensions of the Start Date and/or the Completion Date, the Center *must* be completed no later than March 15, 2013 (the 'Final Completion Date')." (JA 866 ¶ 6) There can be no dispute that ZCDMW failed to comply with this very explicit provision, and, indeed, ZCDMW concedes this fact. (JA 941 ¶21) The plain language of the Lease Amendment makes clear

29

that ZCDMW failed to satisfy its obligations thereunder, and, thus, the Rustam Guiv was entitled to terminate the lease by written notice. (JA 865-66 ¶¶ 4-6) Rustam Guiv, for its part, complied with the Lease Amendment by providing the appropriate notice. (JA 876)

ZCDMW acknowledges that as of January 3, 2014, it has failed to have any building construction plans approved. (JA 282: 16-18) And without doing so, ZCDMW cannot legally construct the Center. *Ergo*, ZCDMW is and remains in breach of the Lease. Further, ZCDMW has only raised $5,000 since May of 2011, so even if ZCDMW had the plans approved, it would not have had sufficient funds to build the center. (JA 344:16-22) Therefore, not only did ZCDMW fail to complete the center, as was required by the Lease Amendment, but ZCDMW failed to even engage in the most basic steps towards beginning construction.

> **b.    Even if the MOU were treated as a contract, which Rustam Guiv denies, ZCDMW breached its terms.**

If the Court were to find the MOU to be an enforceable contract, it would also find that ZCDMW failed to satisfy its terms. The MOU states certain obligations imposed on ZCDMW. Specifically, it requires ZCDMW to provide three submissions for approval by RGF: (1) "an accounting book to list the names & amounts of all donations and expenses" along with "quarterly financial report & account summary of all donations and expenses"; (2) "an accomplishment plan with milestones & deadlines, mutually agreed by the Two parties"; and (3) a

"fallback contingency [sic] plan."  (JA 872-73)  The MOU unambiguously required

ZCDMW to submit these three items to the trust for approval not later than May

15, 2011.  *Id.*

ZCDMW failed to comply with any of these conditions.  (JA 333:16-20; JA

339:10-340:15; JA 768:18-769:8) ("They did not give us a quarterly report in regard

to the fundraising and expenses.  They did not give us a report of the regional

donations and their expenditure.")  The only response Rustam Guiv received is an

email.  (JA 873-75)  As can be seen, ZCDMW submitted no accounting books.  *Id.*

Instead, ZCDMW promised to provide an accounting 'after the new group has had

a chance to review."  *Id.*   And rather than tendering an accomplishment plan,

ZCDMW reported a progress, not even completion, of a single milestone –

submission of the architectural plans by the authorities – and explained that further

actions would flow from that action.  *Id.*  No fall back plan was provided.  Further,

as of today, no milestone contained in the MOU has been accomplished by

ZCDMW.  (JA 340:3-15)  In short, ZCDMW failed to comply with any of the terms

of the MOU.  Having failed to comply with its obligations under the MOU, even if

the MOU were an enforceable agreement – which it is not – ZCMDW is estopped

from seeking to hold Rustam Guiv liable for breaching the agreement.  (JA 872)

31

### c. Rustam Guiv is not estopped from enforcing the Lease Amendment.

ZCDMW argues that Rustam Guiv is estopped or is deemed to have waived the undisputed deadlines contained in the Lease Amendment because it directed ZCDMW to cease construction. To establish equitable estoppel, ZCDMW must show (1) a representation, (2) reliance, (3) change of position, and (4) detriment. *See Princess Anne Hills Civic League*, 413 S.E.2d 599, 603 (Va. 1992) Equitable estoppel is "applied rarely and only from necessity," and ZCDMW must prove "each element by clear, precise, and unequivocal evidence." *Id.* (citing *Dominick v. Vassar*, 367 S.E.2d 487, 489 (Va. 1988); *Hyson v. Dodge*, 96 S.E.2d 792, 795 (Va. 1957); *Baker v. Preston*, 21 Va. (Gilmer) 235, 300 (1821)).

ZCDMW's position is premised upon the assumption that the March 7, 2010 email from Dr. Jahanian constituted a directive to cease work on the Center. (JA 837 ¶10) ZCDMW contends that communication was a breach of the Lease Amendment. It was not. Nonetheless, the legal fallacy in ZCDMW's argument is compounded by its subsequent conclusion that breaching the Amendment causes the pre-amendment terms of the lease to spring into being again. (JA 266:3-19) Of course, this position is wholly unsupported either in law or in fact as demonstrated by the plain language of the Lease Amendment. (JA 865-66 ¶¶ 3-6)

As an initial matter, ZCDMW's argument fails because the email constituted neither an instruction nor a demand. It could not, because neither Dr. Jahanian nor

RGF exercises any authority over ZCDMW or its activities. (JA 848-64; JA 865-66). Even assuming, *arguendo*, that RGF did possess such authority, the plain language of the email disproves the claim. Dr. Jahanian merely "recommend[ed] the Vandsar to stop signing any contract and do not write any check as much as possible." (JA 869) That this recommendation was of no moment is proven by the fact that ZCDMW's own internal meeting notes confirmed that it had no intention of ceasing its efforts as Dr. Jahanian suggested. (JA 945-46) ("In short [Dr. Jahanian] was told that Vandsar will continue with its mission for all the reasons that the Guiv foundation asked us to build in the first place."); ("I was asked to tell Bahram to communicate with all consultants and inform them of the situation see where they stand and what does it take to continue. Soheli was discussed for his Engineering capabilities and his offer, Hormoz and Rostam were in his presentation and like to retain his services."). Any interruption that this communication from Dr. Jahanian caused, *vel non*, was so brief that it cannot be said to have caused any breach of the contract. After all, by April 28, 2010, ZCDMW had

> considered Dr. Jahanian's *recommendation*, temporarily stopped the progress of work as suggested by you, and discussed the matter with the Zoroastrian Community. It was determined, that in the best interest of the Zoroastrian community of Metropolitan Washington, D.C., area and Vandsar, as a representative of and on behalf of the Rustom Guiv Foundation, to stay on course with the mission before us by continuing to progress and move forward.

(JA 948)

33

The meaning of this was just as unambiguous as the language ZCDMW used in the letter. As ZCDMW explained during its deposition this letter served as a confirmation that ZCDMW was "going to try to continue the construction process." (JA 299:9-22) The record demonstrates conclusively that ZCDMW did not rely on Dr. Jahanian's requests, nor did it change its position in light of Dr. Jahanian's correspondence. At most, ZCDMW briefly paused its efforts then resumed construction. This brief pause cannot be said to represent detrimental reliance.

Ultimately, there can be no real dispute that the Lease Amendment imposed a strict construction timeline. Similarly, there can be no legitimate dispute that ZCDMW even today has not completed construction of the Center – proving that it failed to comply with the timeline established in the Lease Amendment. There being no dispute as to any of the material facts, it is clear that ZCDMW affirmatively breached its obligations under the Lease and the Lease Amendment, and that Rustam Guiv is entitled as a matter of law to judgment in its favor. The Lease and the Lease Amendment are clearly the operative contracts. Despite acknowledging in the Lease that time is of the essence, ZCDMW breached each and every deadline established for it under these contracts. That much is uncontroverted. RGF has been severely injured by ZCDMW's continued flagrant breach of these legally operative agreements. As such, this Court should uphold the District Court's finding that no

material issue of disputed fact exits in this case and Rustam Guiv is entitled to judgment as a matter of law.

### III. The District Court's finding that ZCDMW had failed to complete construction of the Darb-e-Mehr is undisputed by the record. ZCDMW raises an entirely new argument that was not made on the record before the Eastern District of Virginia. (Issues Presented V)

In its brief, ZCDMW argues for the first time that it did not breach the subject lease because it did in fact construct a Darb-E-Mehr. This argument should be dismissed without further review because ZCDMW failed to present this argument to the Eastern District of Virginia. This Court has consistently ruled that it will not consider issues raised for the first time on appeal. *See Muth v. U.S.*, 1 F.3d 246, 250 (4th Cir. 1993) ("As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered.") (citing *National Wildfire Fed. v. Hanson*, 859 F.2d 313, 318 (4th Cir. 1988); *Stewart v. Hall*, 770 F.2d 1267, 1271 (4th Cir. 1985)). "Exceptions to this general rule are made only in very limited circumstances, such as where refusal to consider the newly-raised issue would be plain error or would result in a fundamental miscarriage of justice." *Id.*

ZCDMW failed to raise this argument in the lower court and fails to argue that exceptional circumstances justify departure from the general rule. Indeed, no exceptional circumstances exist to explain why ZCDMW would raise a completely novel argument at this point in time. For this reason, the Court should dismiss ZCDMW's argument without reaching its merits.

Even if the Court were to consider ZCDMW's argument, however, it will find that it is utterly meritless. The argument should be dismissed summarily because ZCDWM equivocally admitted that it did not build a Darb-e-Mehr by the date Rustam Guiv sought to terminate the lease. (JA 941 ¶ 21) Rustam Guiv asked ZCDMW in discovery to "[a]dmit that [it] did not complete construction of a Darb-e-Mehr Religions Center for worship and practice of Zoroastrian religion, customs and traditions on the Property by March 15, 2013." *Id.* ZCDMW admitted the truth of this statement. This admission is sufficient in and of itself to dismiss ZCDMW's arguments.

ZCDMW attempts to argue it satisfied the terms of the Lease and Lease Amendment by renovating a building that existed on the property when it was acquired. The Lease and Lease Amendment clearly contemplate "construction" of a Darb-e-Mehr. The plain meaning of that term could hardly be satisfied by allegedly renovating a pre-existing structure on the Property. (JA 38-56) Moreover, the timelines outlined in the Lease Amendment indicate that construction was to take place within nine months, and construction was to be completed in over two years. (JA 55 ¶ 3) If ZCDMW had not completed construction in two years, Rustam Guiv had the option of extending the construction deadline for two years. (JA 55 ¶ 4) Additionally, the Lease Amendment recitals establish that construction had not begun before its execution on January 1, 2009. (JA 55) ZCDMW fails to provide

any record evidence of the alleged "renovation" or to explain how such would satisfy the requirements outlined in the Lease and Lease Amendment. It fails to provide the date the renovation was completed. It fails to provide any details regarding the substance of the renovation.

This half-hearted attempt to raise a new argument on appeal cannot overcome the substance of the Lease and Lease Amendment or the totality of the correspondence between the parties. ZCDMW's contention that Rustam Guiv never introduced any evidence that "the worship center constructed by ZCDMW on the Vienna Property did not satisfy the requirements of the Lease Amendment" is further evidence that this constitutes a completely novel argument. Firstly, insofar as ZCDMW did not contend below that its renovation satisfied its obligations under the Lease, it would be illogical to impose a burden on RGF to disprove this claim. Secondly, assuming, *arguendo*, that a renovation of the previously existing structure satisfied the Lease and Lease Amendment, the correspondence between the parties and in the briefs before the lower court would have acknowledged the position. In any case, the issue would have been discussed and documented before now. Finally, this position is wholly inconsistent with ZCDMW's contention that the MOU constituted a renewed lease to permit them to construct the Center. After all, if the work envisioned under the Lease were already accomplished, there would have been

no need for the MOU. For all these reasons, this argument presents no material issue of fact and should be dismissed.

## IV. The District Court's award of attorney's fees to Rustam Guiv was reasonable and proper. (Issues Presented VI)

Rustam Guiv acknowledges that this Court reviews conclusions of law, including contract interpretation, *de novo*. However, this Court has made clear that it reviews awards of attorney fees for abuse of discretion. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) ("We review for abuse of discretion a district court's award of attorney's fees, but, we will only reverse such an award if the district court is 'clearly wrong' or has committed an 'error of law.'")

ZCDMW characterizes this issue as one of contract interpretation, however, it fails to specify or cite to the section of the Lease governing attorney fees that it contends was misinterpreted by the trial court. Regardless, this simply is not a matter of contract interpretation. In fact, ZCDMW's does not ask this Court to interpret the contract itself. Rather, it asks this court to review the underlying pleadings and memoranda of law to evaluate reasonableness of Rustam Guiv's fees. The reasonableness of the lower court's award of attorney fees is reviewed for abuse of discretion.

Under this standard, it is clear that the trial court did not abuse its discretion in awarding Rustam Guiv a portion of its attorney fees. ZCDMW would have this Court find that it "prevailed" on every aspect of the instant lawsuit prior to the Court

38

granting summary judgment on behalf of Rustam Guiv. This is an overly simplistic interpretation of the case that ignores precedent in the Commonwealth. As the court correctly held, citing *Sheets v. Castle*, 263 Va. 407, 413-14, 559 S.E.2d 616, 620 (2002), "[t]he general rule in Virginia is that the 'prevailing party' is the 'party whose favor the decision or verdict in the case is rendered.'" (JA 1290-91) The court further acknowledged that, rather than counting pleadings, it is to "consider 'the general result' of the case and determine 'who has, in the view of the law, succeeded in the action.' *Id.*" (JA 1291)

The court entered a final order in favor of Rustam Guiv unequivocally establishing it as the prevailing party in this litigation. The court ultimately upheld each position taken by Rustam Guiv throughout the entirety of the case. First, the court found that the Lease as Amended on January 1, 2009 was the only operative contract between the parties. (JA 1160) ("Two documents control the controversy's contours. The first is the original Lease … [while Plaintiff's] inaction led to the creation of the second principal document involved in the controversy: an amendment to the Original Lease.") Second, the court found that ZCDMW breached the lease as Rustam Guiv had contended since before the instant lawsuit was filed. (JA 1167) ("Under the explicit terms of the contract, ZCDMW's first breach occurred on November 1, 2009.")

39

Finally, the court agreed with Rustam Guiv's third argument that the MOU had no legal effect. The court made three findings with respect to the MOU: (1) the "MOU is too vague to be enforceable"; (2) "even if [it] was part of the integrated lease agreement … RGF still had the right to terminate the tenancy after ZCDMW failed to meet the 'Final Completion Date' in March of 2013"; and (3) had it found the MOU was an enforceable contract "ZCDMW breached that hypothetical agreement by failing to carry out the tasks outlined within it." (JA 1170)

It is clear from the court's order granting Rustam Guiv's Motion for Summary Judgment that Rustam Guiv is the prevailing party. Indeed, as the court correctly stated, it "entered judgment in favor of RGF, who was clearly the prevailing party. If this were not the case, ZCDMW's request for this Court [sic] reconsider its decision would make little sense." (JA 1291) ZCDMW makes no effort to explain how this holding was either unsupported by fact, or flowed from an incorrect application of the law. It cannot. The court certainly did not abuse its discretion in determining that Rustam Guiv was the prevailing party of the case.

Further, the court did not abuse its discretion in determining the reasonableness of Rustam Guiv's attorney fees. Indeed, the court only awarded Rustam Guiv the fees that it deemed Rustam Guiv had satisfied the burden of proving were reasonable. (JA 1292-94) The court used the *Laffey* Matrix to calculate customary fees for attorneys in Alexandria, Virginia and lowered the rates

40

sought by Rustam Guiv. (JA 1293) From its opinion, it is clear that the court reviewed the fees sought by Rustam Guiv in great detail and did not abuse its discretion in awarding those it sought to be reasonable. Even if this Court were to review the lower court's decisions *de novo*, as ZCDMW requests, the award of attorney's fees was proper.

## **CONCLUSION**

WHEREFORE, Rustam Guiv respectfully requests that this Court affirm the judgment of the District Court.

/s/ Billy B. Ruhling, II
Billy B. Ruhling, II
Troutman Sanders LLP
Suite 500
1850 Towers Crescent Pl.
Tysons Corner, VA 22182
T 804-734-4334

Massie P. Cooper
Troutman Sanders LLP
1001 Haxall Point
P.O. Box 1122
Richmond, VA 23218
T 804-697-1392

**<u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>**
**Certificate of Compliance with Type-Volume Limitation,**
**Typeface Requirements, and Type Style Requirements**

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

>   this brief contains <u>9,883</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

>   this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

>                                    <u>/s/ Billy B. Ruhling, II            </u>
>                                    Billy B. Ruhling, II

>                                    *Counsel for Appellees*

Dated:  November 17, 2014

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on November 17, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

>Robert L. Vaughn, Jr.
>O'Connor & Vaughn LLC
>11490 Commerce Park Dr.
>Suite 510
>Reston, Virginia 20191
>T 703-689-2100

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

>/s/ Melissa A. Dockery
>Melissa A. Dockery
>GIBSON MOORE APPELLATE SERVICES, LLC
>421 East Franklin Street
>Suite 230
>Richmond, VA 23219